[Crim. No. 1377. In Bank.—August 14, 1907.]

THE PEOPLE, Respondent, v. WILLIAM B. BRADBURY, Appellant.

CRIMINAL LAW—ASSAULT WITH INTENT TO COMMIT RAPE—CONVICTION OF ASSAULT.—Under an information for an assault with intent to commit rape, a conviction of an assault may be had.

ID.—ASSAULT DEFINED—VIOLENT INJURY—BODILY HARM.—Under section 240 of the Penal Code, defining an assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another," the "violent injury" there mentioned is not synonymous with "bodily harm," but includes any wrongful act committed by means of physical force against the person of another, even although only the feelings of such person are injured by the act.

ID.—IMPOTENCY OF DEFENDANT.—The fact that a defendant charged with an assault with intent to commit rape was sexually impotent does not preclude a conviction for an assault on the prosecuting witness, if his acts were such as to create a well-founded fear upon her part that such was his intent.

ID.—INSTRUCTIONS—MOTIVES OF WITNESSES FOR PROSECUTION.—An instruction which in effect directed the jury to acquit the defendant if they believe that some of the witnesses of the prosecution were actuated by illegal motives, notwithstanding ample evidence for his conviction might have been given by other witnesses, is properly refused.

ID.—MISCONDUCT OF DISTRICT ATTORNEY—ASKING IMPROPER QUESTION.
—In a criminal prosecution the mere asking by the district attorney of a single improper question will not warrant a reversal of a judgment of conviction, if the district attorney was immediately reprimanded by the court for asking it, and made no attempt to repeat the question or to ask a similar one, and the jury were expressly instructed to pay no attention to anything suggested by the question.

APPEAL from a judgment of the Superior Court of Marin County and from an order refusing a new trial. Thomas J. Lennon, Judge.

The facts are stated in the opinion of the court.

James W. Keyes, for Appellant.

U. S. Webb, Attorney-General, and Thomas P. Boyd, District Attorney, for Respondent.

McFARLAND, J.—This case was in the district court of appeal, first district, and an opinion was there delivered. We approve and adopt all of the following part of that opinion:—

"The defendant is charged in the information herein with an assault with intent to commit rape. Upon the trial thereon the jury found him guilty of an assault, and he was sentenced to pay a fine of one hundred and fifty dollars. From this judgment he has appealed:—

"1. That upon the charge set forth in the information a conviction of an assault could be had is not disputed. (See *People* v. *Green,* 1 Cal. App. 432, [82 Pac. 544].) It is urged, however, that as the jury found the defendant was not guilty of an attempt to commit rape he could not be convicted of an assault, unless there was evidence of some violent injury to the prosecuting witness; and that the record fails to show that such evidence was given. An assault is defined (Pen. Code, sec. 240) to be 'an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.' The 'violent injury' here mentioned is not synonymous with 'bodily harm,' but includes any wrongful act committed by means of physical force against the person of another, even although only the feelings of such person are injured by the act. The term 'violence' as used here is syn-

onymous with 'physical force,' and in relation to assaults the
two terms are used interchangeably. (*State* v. *Wells,* 31
Conn. 212; *State* v. *Daly,* 16 Or. 241, [18 Pac. 357]; Am. &
Eng. Ency. of Law, 'Violence.') Mr. Bishop says (2 Crim.
Law, secs. 32-34): 'The kind of physical force is imma-
terial; . . . it may consist in the taking of indecent liberties
with a woman, or laying hold of and kissing her against her
will.'

"There was testimony before the jury to the effect that the
defendant was sexually impotent, and the court instructed
them that if such was the fact he would not be guilty of the
offense charged in the information; but although, in view of
this fact, the jury were authorized to find that there was
an absence of any. ability on his part to commit rape on the
prosecuting witness, they were not precluded from finding
that his acts were such as to create a well-founded fear upon
her part that such was his intent, and if so he was guilty of
an assault. If the information had charged him with merely
an assault upon her, the evidence set forth in the record
would be sufficient to sustain his conviction thereon.

"2. The court did not err in refusing to give the following
instruction asked on behalf of the defendant: 'If the jury
believe, from the acts of the parties appearing as witnesses
for the prosecution, and from all the facts and circumstances
in the case, that they, or any number of them, have pursued
a common object of wrongfully prosecuting the defendant
with the purpose of obtaining money from him, or for any
other wrongful purpose, and that such prosecution was insti-
tuted not with the belief that the defendant was guilty of
any crime, but with the purpose of wrongfully charging him
with such crime, that they might profit from making such
charge, the jury should find the defendant not guilty.'

"A fatal objection to this instruction is that it authorizes
the jury to acquit the defendant if they believe that *some* of
.the witnesses for the prosecution were actuated by illegal mo-
tives notwithstanding ample evidence for his conviction might
have been given by other witnesses."

The only other contention made by appellant for a reversal
is founded upon the alleged misconduct of the district at-
torney. This alleged misconduct appears in the record as fol-
lows: One Quigley had testified as a witness for the prosecu-

tion, and defendant, when presenting his evidence, had called and examined as a witness one L. B. Hills, who testified to certain statements made to him by Quigley which the latter had denied making; thereupon, on cross-examination, the following occurred:—

"*L. B. Hills.*—I have known Mr. Quigley about five or six months. He told me that a hired man had knocked Mr. Bradbury down.

"*Mr. Boyd.*—Did he tell you why he knocked him down?

"A. No, sir.

"Q. Did he say he knocked him down for insulting his wife?

"*Mr. Kierulff.*—It seems to me that that is irrelevant, incompetent, and immaterial, and an improper statement.

"*Mr. Boyd.*—I have the right to the conversation that occurred.

"*Mr. Hosmer.*—He said he did not, and I submit that that is misconduct on the part of the district attorney, and we assign it misconduct.

"*The Court.*—I think it is gross misconduct.

"*Mr. Boyd.*—I submit to your honor's ruling.

"*The Court.*—After the witness has stated that he did not give his reason for it, you have no right to ask him the question and attempt to get before the jury something in that way that you could not do directly. It becomes my duty, gentlemen, in view of the conduct of the district attorney, to admonish you that you will pay no attention to anything suggested by that question or by that answer. It is absolutely not in this case. It is beyond your province, and the question should not have been asked, and you must disregard it entirely."

No further attempt was made by the district attorney to repeat the question, or to ask any other similar questions; he immediately obeyed the ruling of the court. Conceding that it was wrong for the district attorney to ask the question, there is no precedent and no warrant for reversing the judgment merely for the asking of the one improper question, under the circumstances disclosed by the record. The cases where a judgment has been reversed by this court for the improper asking of questions have been in some important respects similar in character to the case of the *People* v. *Wells,*

100 Cal. 459, [34 Pac. 1078], where the district attorney persisted in asking a number of improper questions, and although the court sustained objections to these questions it did not comply with appellant's request that the district attorney be instructed not to ask any more such questions. In that case the court did not hold that the asking of the first improper question would have warranted a reversal, but says that it "would not be, perhaps, of itself sufficient ground for reversing the judgment." In the case at bar only one improper question was asked; the district attorney was severely reprimanded by the court for asking it, and he made no attempt to repeat the question or to ask a similar one; and the jury were expressly instructed to pay no attention to anything suggested by the question. Under these circumstances we do not think that the question could have been seriously prejudicial to the appellant, or that it affords just ground for a reversal. It comes within the ordinary rule that the sustaining of the objection to an improper question is a sufficient disposition of the matter. It is only where a district attorney shows a clear and persistent attempt to influence a jury by wrongfully producing suspicions and hurtful suggestions through improper questions that his conduct in the premises becomes such misconduct as will warrant a reversal.

The judgment and order denying appellant's motion for a new trial are affirmed.

Sloss, J., Lorigan, J., Henshaw, J., Angellotti, J., and Beatty, C. J., concurred.

SHAW, J., concurring.—I concur in the opinion of Justice McFarland. I wish to add, however, that, even in cases where a district attorney does persistently attempt to influence a jury by improper questions calculated to produce suspicions and hurtful suggestions, it is the duty of the counsel for the defendant to make timely objection to the court, and the duty of the court thereupon to instruct the jury that such suggestions must be disregarded and that such suspicions must be rejected, and that when such instructions are given it will not be presumed that the jury were influenced by the improper conduct objected to, unless the record shows extraordinary circumstances tending to show that such influence existed not-

withstanding the caution of the court. I think that the language of the opinions in some of the previous decisions of this court goes too far in support of the theory that there is some sort of a presumption that the misconduct of a district attorney will prevail with the jury and influence them in the face of the positive instructions of the court that they must not consider the suggestions thus improperly made. The presumption should always be that a jury has obeyed the instructions of the court, and unless the contrary is shown by the record, that presumption should prevail in the appellate courts.