[Crim. No. 2104. Third Dist. Feb. 18, 1949.]

THE PEOPLE, Respondent, v. LOUIS C. SHOWERS, Appellant.

Robert A. Zarick and Robert C. Fleming for Appellant.

Fred N. Howser, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

THOMPSON, J.—The defendant was charged in two counts of an information with lewd and lascivious acts committed on April 1, 1948, upon two sisters, aged respectively 9 and 10 years, contrary to the provisions of section 288 of the Penal Code. The defendant failed to take the witness stand in his own behalf. The jury convicted him on both counts. He was sentenced to state prison for the term prescribed by law. The court directed that the sentences shall run concurrently. The defendant was ably represented at the trial by an attorney of his own selection. Other attorneys represent the defendant on this appeal.

The appellant contends the testimony of the girls is inherently improbable, chiefly because the time during which the defendant was alleged to have had the opportunity to commit the offense was insufficient; that the judgment is not supported by the evidence; that there is no evidence of resistance, and that the court erred in permitting prejudicial evidence to be adduced of defendant's sexual intercourse with the mother of the girls.

 Both girls attended school, and were apparently intelligent witnesses. Their evidence was corroborated by numerous circumstances related by a disinterested witness.

While the mother, who was the only witness called by the defendant, and who evidently favored him, first denied on cross-examination that she ever had had intercourse with him, she later, and without objection, admitted that she drank liquor with him and had sexual intercourse with him on the same night of the alleged lascivious acts which were committed upon her two daughters. The evidence was adduced for the purpose of showing the interest of the mother in the outcome of the trial.

The two prosecuting witnesses lived with their mother in her home on Riverside Boulevard in Sacramento. Dissensions arose between the mother and her husband sometime prior to the offenses alleged, and he had left their home. The home contained three bedrooms, a dining room, kitchen and a living room. The children occupied one bedroom and slept in separate bunks, one of which was constructed above the other. The mother occupied a separate bedroom on the same side of a hallway. For about one month prior to the time of the offenses charged, the other bedroom was rented and occupied by Mr. and Mrs. Calavan, who also had access to the living room, kitchen and dining room. It was across the hallway from the mother's bedroom. Mr. Calavan was employed by the Campbell Soup Company in Sacramento. He had previously met the defendant, but was not well acquainted with him.

A few days prior to the alleged offenses, the mother of the girls called a gas repairman because her butane gas supply had been shut off. When the service man arrived, the defendant came with him. That is apparently the first time the defendant had visited their home. He returned on the afternoon of April 1st, which was the day of the alleged offenses. The girls were then at school. Neither Mr. nor Mrs. Calavan was then at home. The mother of the children testified that she went with the defendant that day, about 4 o'clock in the afternoon, to a neighborhood bar, where they drank liquor together. They did not return to her home until about 9:30 p.m.

Mr. Calavan testified that after his work was completed that day, he picked up his wife, and they reached home about 8 o'clock in the evening. When they arrived the two children were the only other persons in the house. The Calavans prepared dinner for themselves and for the children. The children went to bed, and the Calavans went to their own room, where they listened to the radio for some time. The mother of the

children and the defendant arrived about 9:30 p.m. He said that the mother went directly to her bedroom. Soon thereafter Mr. Calavan went into the living room to get the newspaper, and then saw the oldest daughter, clothed in her pajamas, sitting with the defendant on the chesterfield. Calavan said that a few minutes later he returned to the living room to get the remaining portion of the newspaper, and that he then saw the defendant in the mother's bedroom. The girl had then gone back to bed. Calavan said that he was a little disturbed at the defendant's presence in the house at a late hour of the night. He said he heard the defendant leave the house sometime before 11 o'clock that night. The following day he talked to the children about the defendant's conduct. He said "They told me Mr. Showers had attacked them." The older girl said the defendant afterward told her to say her statement regarding his lascivious conduct toward them was only a dream which they had. She said, "He told me to say that I knew it was a dream. He told me that it was a dream, and he was trying to make me believe it was a dream." When asked on examination in court whether her stated charges actually occurred, the older girl said, "Those [acts] did. They actually occurred." Mr. Calavan talked to their mother about the charges, and, failing to obtain her aid, he took the girls to see their aunt, and then took them to the office of the district attorney, where they made statements which led to the arrest and charges against the defendant. Both girls related the acts of licentious conduct of the defendant upon them which he performed soon after he and their mother returned from the cocktail bar that night. The girls were placed in the receiving home, and testified against the defendant at the trial. He failed to take the witness stand to contradict any of their damaging statements.

The testimony of the girls does not appear to be inconsistent or unreasonable. There was some slight conflict upon immaterial details. Both of them stated that they went to bed in their own room after dinner, sometime before 9 o'clock, and that immediately after the defendant and their mother came home, their mother went to her room, and that the defendant came into their bedroom. The older girl said she was sleeping in the upper bunk, and that he came to her and, after talking to and caressing her, persuaded her to get up and go with him into the kitchen, where he committed the offense with which he was charged. She related the

details of that offense with sufficient accuracy. She said that after committing the offense he took her into the living room and sat with her on the davenport. Mr. Calavan testified that he saw them sitting on the davenport when he went from his bedroom to get the newspaper. She was then dressed in her pajamas. That was sometime after 9:30 p.m. Later Mr. Calavan saw the defendant in the bedroom of the mother of the children. After committing the offense upon the older girl, he went into the bedroom of the children and repeated his offense upon the younger girl. Her testimony was not so connected or definite, but she was positive about the essential facts. Both of the girls testified that they told their mother of the defendant's attack upon them the following morning before they went to school.

The mother was the only witness called on behalf of the defendant. She was clearly a very unwilling witness and adverse to the prosecution. She admitted that the children told her the following morning about the defendant's licentious conduct toward them. She said the older daughter said "Mama, I want to tell you something awful, . . . he did an awful thing to me." The mother professed not to believe the story. She was so apparently trying to protect the defendant in her testimony that the prosecution attempted, on cross-examination, to discredit her inconsistent statements, to show her interest in the outcome of the trial. She first said that she went immediately to her room when they returned from the cocktail bar, and went directly to bed and fell asleep. She first denied that the defendant came into her bedroom that night. Later she admitted that he did so. She first denied that she had ever had intercourse with him. Later she admitted, without objection on the part of the defendant, that he had intercourse with her that night. She did not state just when that act occurred. On appeal, it is strenuously insisted that that evidence was prejudicial and that the element of time precludes the possibility of the alleged commissions of lascivious acts upon the children. But those acts are not necessarily inconsistent or improbable. The acts were performed on the children at about 9:30 p.m. The defendant left the house sometime before 11 o'clock that night. The defendant was seen by Mr. Calavan in the bedroom of the mother after 9:30, when Calavan went into the living room to get the newspaper. It must have been more than an hour after that time before the defendant

left the house. The time element may be readily reconciled consistent with the guilt of the defendant.

We are convinced the judgment is amply supported by the evidence. The testimony of the children, which was corroborated in many important details, does not appear to be inherently improbable. It has been frequently held that a judgment of conviction may not be reversed on the ground that the testimony of a prosecuting witness is inherently improbable unless it is so apparently false and unbelievable that reasonable minds may not differ regarding its falsity. (*People* v. *Campbell,* 80 Cal.App.2d 798 [182 P.2d 626]; *People* v. *Mitchell,* 48 Cal.App.2d 422, 429 [119 P. 2d 1000]; *People* v. *Robinson,* 87 Cal.App.2d 772, 774 [197 P.2d 776]; *People* v. *Meyers,* 62 Cal.App.2d 24, 28 [144 P.2d 60].) Although there was corroborating evidence of material circumstances in the present case, it was not necessary to corroborate the essential elements of the crimes testified to by the two girls, provided their evidence was competent and believable, which we think it was. ■ The rule is well established that lewd and lascivious conduct of an adult person upon infants under the age of 14 years does not require corroboration. Infants under that age are not deemed to be accomplices to the crime. (*People* v. *Becker,* 80 Cal.App.2d 691, 693 [181 P.2d 958].) ■ To sustain a conviction of a charge of lascivious conduct upon a female child under the age of 14 years, it is not necessary to prove an attempt to commit rape (*People* v. *Lett,* 69 Cal.App.2d 665 [160 P.2d 112]), or that the child failed to make an outcry or attempted to resist the conduct or acts complained of. (*People* v. *Healey,* 52 Cal.App. 563 [199 P. 551].) ■ The gist of the crime charged under section 288 of the Penal Code is the wilful commission of lewd or lascivious acts upon the body of a child under the age of 14 years, with the intent of arousing the lust or passions of the child. ■ Nor is the evidence of a child necessarily fatally defective merely because it may contain some "inconsistent statements as to the manner in which the acts were committed." (*People* v. *Lett, supra.*) ■ Where there is satisfactory evidence of the essential elements of the crimes charged, as we think there is in the present case, the statements which indicate that the defendant attempted to commit rape, even though that may seem improbable, do not render the essential evidence incompetent, or require a reversal of the judgment. The statement of the older girl to that effect appears to have a rational explana-

tion. Such evidence should be considered, together with the entire testimony of the witness, and any apparent inconsistencies go to the weight of the entire evidence and to the credibility of the witness. Those are questions for the determination of the jury. (*People* v. *Healey, supra.*) The jury was fully and fairly instructed regarding the necessary elements of the crimes charged. A proper cautionary instruction was given to the jury in the usual language which has been frequently approved. We find no error in the instructions which were given to the jury. No complaint is made of instructions either given or refused.

█ The court did not err in receiving evidence on cross-examination of the mother of the children that she had had sexual intercourse with the defendant on the night of the alleged offenses against her daughters. That evidence was competent to show her interest in the outcome of the trial and to rebut her denial that the defendant was in her bedroom shortly after the commission of the offenses upon her daughters. (*People* v. *Souleotes,* 27 Cal.App. 288 [149 P. 802] ; *People* v. *Percole,* 92 Cal.App. 470, 481 [268 P. 473].) The mother had previously denied that the defendant was in her room that night. The inference was that he had immediately left the house upon their return from the cocktail bar, and therefore could not have committed the offenses upon the children. The challenged evidence was competent for impeachment purpose.

In the Souleotes case, *supra,* the facts with relation to the competency of the evidence of intimacy of the mother with the defendant were very similar to those of the present case. In that case the evidence was objected to on cross-examination, and the objection was overruled. The court said:

"We find no error in the rulings of the court on the cross-examination of the mother of the prosecutrix. She was the only witness called for the defendant; and she testified on direct examination that her daughter had admitted to her, after the information against the defendant had been filed, that the defendant had never tampered with her. On cross-examination she denied that she was friendly with the defendant; but later, in answer to several questions over objection, she admitted that she was intimate with the defendant, and had had on a number of occasions sexual intercourse with him. Such questions were plainly proper as tending to show her interest in the defendant, and thereby affecting her credibility as a witness."

The challenged evidence in the present case was competent to rebut the credibility of the witness, and to show her interest in the case. Moreover, in this case there was no objection to that evidence at the trial, and no motion to strike it from the record or to direct the jury to disregard it. It has been frequently held that the competency of evidence may be waived by failure to object to it at the trial. ■ A defendant may not ordinarily remain silent and permit incompetent or prejudicial evidence to be adduced at a trial against him, without objection and without asking that it be stricken from the record, or making a request of the court to instruct the jury to disregard it, and then for the first time complain of that evidence on appeal. (*People* v. *Houston,* 88 Cal.App.2d 11, 17 [198 P.2d 53]; *People* v. *Simmons,* 28 Cal.2d 699, 723 [172 P.2d 18]; 10 Cal.Jur. § 111, p. 824.) In the Simmons case, Mr. Justice Shenk said in a concurring opinion:

". . . It is conceded that on the trial defendant's counsel made no objection to the admission of the statements in evidence and no motion to strike or limit its effect was made. It is the rule that unless objection to it is made at the trial such evidence is beyond attack on appeal and may be considered in support of the judgment."

The record indicates that the defendant had a fair and an impartial trial. The jury found him guilty on both counts of the information. The sentences were directed to run concurrently. There appears to have been no miscarriage of justice.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.