[Crim. No. 12259. Third Dist. June 21, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
KALVIN JOSEPH CICERO, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*See footnote 1, *post,* page 469.

466

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Gabriel C. Vivas, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Jane Kirkland Fischer, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SIMS, J.—In this case,[1] we construe the term "force" in Penal Code section 288, subdivision (b),[2] which makes criminal the commission of a lewd act by force upon a child under the age of 14.

### FACTUAL AND PROCEDURAL BACKGROUND

Facts and circumstances material to the published portion of this opinion are as follows:

Defendant was charged in an information with two counts of violation of section 288, commission of lewd and lascivious acts upon a child under the age of 14 years on February 20, 1982. The information also alleged that the acts had been committed by force or violence (§§ 288, subd. (b); 1203.066, subd. (a)(1)), that defendant was a stranger to the victims and made friends with them for the purpose of committing the lewd acts (§ 1203.066, subd. (a)(3)), and that the acts were committed on more than one victim at the same time or in the same course of conduct (§ 1203.066, subd. (a)(7)).

The information also alleged defendant had served a separate prison term as a consequence of prior convictions (for violation of §§ 220 [assault with intent to commit rape] and 245 [assault with a deadly weapon]) to be used as an enhancement pursuant to Penal Code section 667.5, subdivision (b). Defendant waived a jury and was tried by the court. During trial, defendant admitted the prior convictions and service of the prison term.

---

[1]Pursuant to rule 976.1 of the California Rules of Court, the Reporter of Decisions shall publish all portions of this opinion except parts II, III and IV, which do not meet criteria for publication.

[2]All further statutory references are to the Penal Code unless otherwise indicated.

The evidence was largely uncontradicted. On February 20, 1982, Corinna B., age 11, and Michelle H., age 12, were riding their bikes on a paved walkway or bike path next to the Lindo Channel, a waterway in Chico. The girls stopped and got off their bikes at a point where the path and the waterway ran under a freeway. Defendant, who was 24 years old, was jogging. He approached the girls and asked them their names and where they went to school. The conversation was friendly; defendant told the girls he lived down the street and went to Chico State.

The girls started to throw rocks into the water. Then the girls began to play at pretending to throw each other into the water. Michelle asked defendant to help her throw Corinna into the water and defendant came over and said, "[W]hy don't I throw you both in the water."

Defendant then picked up the girls by the waist, one under each arm, and began to carry them along. As he did so, the girls slipped down and he moved his hands between their legs. While carrying the girls along in this fashion, defendant opened and closed his hands on the girls' crotches. Defendant carried the girls along for about 9 seconds, covering a distance of 15 to 20 feet. The girls, who were laughing, thought at that moment defendant was playing a game and that it was "an accident" that he was feeling their crotches; they therefore made no attempt to get away.

With defendant still holding each girl around the waist, the trio sat down. Corinna told defendant she was getting scared and was supposed to be home. Defendant replied he would let the girls go if Corinna would give him a kiss. Corinna kissed him on the cheek.[3]

At that point Michelle pulled defendant's arm away and ran away, distracting defendant sufficiently so that Corinna, too, slipped out of his arm and ran.

After the girls broke away from defendant's grasp, they ran along the path up the hill. Defendant ran past them, stopped at the top of the hill and asked the girls, "[A]re you sure there's nothing I can do?" He told the girls not to tell anybody.

---

[3]The evidence is in conflict with respect to whether Corinna kissed defendant. Corinna testified she did not kiss defendant; rather, she made a clicking sound with her tongue, whereupon defendant asked her to give him "a real kiss" and tried to "french kiss" her with his tongue. Michelle said Corinna gave defendant a "light kiss" on the lips. Defendant testified Corinna kissed him on the cheek. At sentencing, the trial court indicated it believed defendant's version of the kissing episode: "No question that he told this one girl to kiss him, and when she gave him a little brush kiss on the cheek, he requested a real kiss, and he attempted to kiss her again."

Defendant then got in his car and drove away. Corinna memorized the license plate number. The girls then ran to Michelle's house, a couple of blocks away, where they told her 21-year-old sister what had happened. To Michelle's sister, the girls appeared shaken, nervous and uncertain of what had happened. They were starting to cry. The girls said the man had tried to give Corinna a french kiss and had grabbed at their private parts.

At the conclusion of trial, the court found defendant guilty of two counts of having committed a lewd or lascivious act on a child under the age of 14 by force (§§ 288, subd. (b); 1203.066, subd. (a)(1)), although the court found no violence or threat of great bodily harm. The court also made findings that defendant was a stranger who made friends with the victims for the purpose of committing the lewd acts (§ 1203.066, subd. (a)(3)) and that the acts were committed on more than one victim at the same time or in the same course of conduct (§ 1203.066, subd. (a)(7)).

Pursuant to section 667.6, subdivision (d), the court sentenced defendant to the middle term of six years in state prison on count 1, and to the lower term of three years consecutive on count 2.[4] The court then added one year for the prior prison term enhancement, for a total of ten years in state prison.

Defendant contends on appeal, among other things, that his sentence was excessive because there was insufficient evidence to support a finding of "force" which required the court under section 667.6, subdivision (d), to impose full consecutive sentences. We affirm.

DISCUSSION

I

We address defendant's contention there is insufficient evidence to support the trial court's finding that he committed the charged lewd acts by force.

A

■ The test to determine the sufficiency of the evidence is whether, viewing the whole record in a light most favorable to the judgment below, a rational trier of fact could find defendant guilty beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 562 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) While an appellate court must determine whether substantial evidence on the whole record supports each essen-

---

[4] A grant of probation was precluded by the court's findings under section 1203.066.

tial element of an offense (*id.*, at p. 577), we are mindful that ". . . '[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]'" (*People* v. *Thornton* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267], citation omitted.)

B

Section 288[5] makes criminal any lewd act upon a child under the age of 14 years. Subdivision (a) of that section[6] prohibits any such act upon or with any part of the body of the child with the intent to satisfy the sexual desires of either the defendant or the child. Punishment for violation of subdivision (a) is fixed at three, six or eight years in state prison. Subdivision (b) makes criminal the commission of the same acts accomplished "by use of force, violence, duress, menace, or threat of great bodily harm . . . ." The punishment is also three, six or eight years in state prison.

In this appeal, the importance of the trial court's findings that force was used on two victims originates in the mandates of section 667.6. If the offenses were committed by force on separate victims or on the same victim on separate occasions, section 667.6, subdivision (d), requires the sentencing court to impose full consecutive sentences.[7] Section 667.6, subdivision (d), effectively removes choices otherwise permitted the sentencing court for concurrent or limited consecutive sentences (see § 1170.1), and for permissive full consecutive sentences. (See § 667.6, subd. (c); *People* v. *Belmontes* (1983) 34 Cal.3d 335, 343-346 [193 Cal.Rptr. 882, 667 P.2d 686].)

---

[5]Section 288 provides in pertinent part: "(a) Any person who shall willfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six, or eight years. [¶] (b) Any person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or threat of great bodily harm, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six or eight years."

[6]All further unspecified references to "subdivision (a)" or "subdivision (b)" are to subdivisions of section 288.

[7]Section 667.6, subdivision (d), provides: "A full, separate, and consecutive term shall be served for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm if such crimes involve separate victims or involve the same victim on separate occasions. [¶] Such term shall be served consecutively to any other term of imprisonment, and shall commence from the time such person would otherwise have been released from imprisonment. Such term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to such term shall not be merged therein but shall commence at the time such person would otherwise have been released from prison."

## C

■ We turn now to the question of whether lewd acts were accomplished "by use of force" upon the victims in the present case. We focus first on the interval during which defendant picked up the girls and, while carrying them along, felt their crotches. There is no dispute defendant committed lewd acts on the girls when he felt their crotches; the contention is no force was used as a matter of law.

### 1.

Subdivision (b), containing "by use of force," was added to section 288 in 1979. (Stats. 1979, ch. 944, § 6.5, p. 3254.) To our knowledge, no reported case has discussed the meaning of "force" in subdivision (b).

Therefore, "We are guided by the fundamental rules of statutory construction. ■ A court ' " 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " ' (*Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 732 [114 Cal.Rptr. 460, 523 P.2d 260], quoting *People* v. *Superior Court* (1969) 70 Cal.2d 123, 132 [74 Cal.Rptr. 294, 449 P.2d 230].) To determine such intent, the court must turn first to the language of the statute itself. (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1].)" (*Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 608 [189 Cal.Rptr. 871, 659 P.2d 1160].) Every statute should be construed with reference to the whole system of law of which it is a part. (*Moore* v. *Panish* (1982) 32 Cal.2d 535, 541 [186 Cal.Rptr. 475, 652 P.2d 32].)

■ Subdivisions (b) and (a) of section 288 on their face draw a distinction between those lewd acts that are committed by force and those that are not. Because of the application of sections 1203.066, subdivision (a)(1), and 667.6, subdivision (d), the violation of subdivision (b) is manifestly a more serious offense than the violation of subdivision (a). The sentencing court cannot grant probation to a defendant convicted of subdivision (b). (§ 1203.066, subd. (a)(1).) In many cases, a defendant convicted of two or more offenses under subdivision (b) will face a mandatory term in state prison that is at least twice as long as the term available to a defendant who commits multiple offenses under subdivision (a). (§ 667.6, subd. (d).) The consequential statutory distinction between subdivisions (a) and (b) must be given significance, because the Legislature is not presumed to use statutory language in a sense which would render nugatory or redundant important provisions of a statute. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 647 [335 P.2d 672]; see *People* v. *Hawes* (1982) 129 Cal.App.3d 930, 939 [181 Cal.Rptr. 456].) Subdivision (b) must therefore

proscribe conduct significantly different from that proscribed by subdivision (a).

It necessarily follows that if commission of a lewd act itself constitutes the minimum proscribed conduct under subdivision (a), then in cases where "force" is charged under subdivision (b), and the People pursue a theory that physical force was used on a child,[8] and the child is not physically harmed, it is incumbent upon the People to prove that the defendant used physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself. (See *People* v. *Caudillo* (1978) 21 Cal.3d 562, 582-583 [146 Cal.Rptr. 859, 580 P.2d 274].) ■ In the instant case, that requirement is doubly met: defendant's acts of picking the girls up and carrying them along were applications of physical force substantially different from *and* substantially greater than that necessary to accomplish the lewd act of feeling their crotches.

## 2.

Although a comparison of subdivisions (a) and (b) enables us to place some limits on the appropriate definition of "force," it does not end our inquiry. We presume all would agree that one who inflicts physical harm on a child in the commission of a lewd act is properly convicted of a violation of subdivision (b) "by use of force." Here, however, there is no dispute that defendant did no physical harm to either child. Is physical harm to the child an essential ingredient of "force" in subdivision (b)?

■ It is, of course, the policy of this state to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit. (*Carlos* v. *Superior Court* (1983) 35 Cal.3d 131, 145 [197 Cal.Rptr. 79, 672 P.2d 862]; *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) ■ However, "It is a well-recognized rule of construction that after the courts have construed the meaning of any particular word, or expression, and the legislature subsequently undertakes to use these exact words in the same connection, the presumption is almost irresistible that it used them in the precise technical sense which had been placed upon them by the courts." (*City of Long Beach* v. *Payne* (1935) 3 Cal.2d 184, 191 [44 P.2d 305].) This rule of statutory construction has been applied to penal statutes. (See *In re Jeanice C.* (1980) 28 Cal.3d 210, 216 [168 Cal.Rptr.

---

[8]In this case we have no warrant to consider whether psychological coercion, without physical touching, might constitute an application of "force" or whether that situation might better be handled exclusively within the notions of "duress" or "menace" under subdivision (b) of section 288.

455, 617 P.2d 1087]; see also *People* v. *Superior Court* (*Brotherton*) (1983) 147 Cal.App.3d 281, 287 [195 Cal.Rptr. 96].)

As both the People and defendant suggest, we turn to the law of rape for guidance in defining "force." Section 261, subdivision (2), defines rape as an act of sexual intercourse accomplished with a person not the spouse of the perpetrator "accomplished against a person's will by means of force . . . ." The concept of "force" has been included in California's statutory definition of rape since 1850, when section 47 of the Act Concerning Crimes and Punishments provided, in pertinent part, "Rape is the carnal knowledge of a female, forcibly and against her will." (Stats. 1850, ch. 99, § 47, p. 234.)[9]

At common law, rape was defined as unlawful sexual intercourse with a female person against her will or consent. (Perkins & Boyce, *op. cit. supra*, pp. 197-199.) Historically, some courts included proof of substantial force as an element of the crime of rape. (*Id.* at pp. 210-212.) According to Perkins and Boyce, the better view has been to require a showing of only such force as is necessary reasonably to demonstrate that an act of intercourse has been undertaken without the victim's consent. (*Id.*, at p. 211.) California has been of this view. Thus, "Bodily injury is not the essence of the offense." (*People* v. *Tollack* (1951) 105 Cal.App.2d 169, 171 [233 P.2d 121].) The kind of physical force is immaterial; it may consist in laying hold of and kissing a woman against her will. (*People* v. *Bradbury* (1907) 151 Cal. 675, 677 [91 P. 497]; followed in *People* v. *Tollack, supra,* 105 Cal.App.2d at p. 171.)

■ As these authorities make clear, the fundamental wrong at which the law of rape is aimed is not the application of physical force that causes physical harm. Rather, the law of rape primarily guards the integrity of a woman's will and the privacy of her sexuality from an act of intercourse undertaken without her consent. Because the fundamental wrong is the violation of a woman's will and sexuality, the law of rape does not require that "force" cause physical harm. Rather, in this scenario, "force" plays merely a supporting evidentiary role, as necessary only to insure an act of intercourse has been undertaken against a victim's will.

It seems both logical and fair to us that if the will and sexuality of an adult woman are protected by the Penal Code, then the will and sexuality of children deserve no lesser protection. ■ Accordingly, both logic and fairness compel the conclusion that "force" in subdivision (b) must reason-

---

[9]Many other jurisdictions have also defined the concept of "force" in the context of the law of rape. (See Perkins & Boyce, Criminal Law (3d ed. 1982) pp. 210-212.)

ably be given the same established meaning it has achieved in the law of rape: "force" should be defined as a method of obtaining a child's participation in a lewd act in violation of a child's will and not exclusively as a means of causing physical harm to the child.

### 3.

But if we are to borrow the concept of "force" from the law of rape, so as to define the concept in terms of its effect on the will of a child, we must first confront a perplexing statutory amendment. The original language of section 288, subdivision (b), as added by the Legislature in 1979, provided: "Any person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or threat of great bodily harm, and *against the will of the victim,* shall be guilty of a felony . . . ." (Stats. 1979, ch. 944, § 6.5, p. 3254, italics added.) In a 1981 amendment, the Legislature deleted "and against the will of the victim" from the statute. (Stats. 1981, ch. 1064, § 1, p. 4093.)

We cannot simply dismiss this amendment. ■ "It has been repeatedly declared that where changes have been introduced by amendment it is not to be assumed that they were without design . . . ." (*People* v. *Valentine* (1946) 28 Cal.2d 121, 142 [169 P.2d 1]; *People* v. *Salazar* (1983) 144 Cal.App.3d 799, 807 [193 Cal.Rptr. 1]; see *People* v. *Dillon* (1983) 34 Cal.3d 441, 467 [194 Cal.Rptr. 390, 668 P.2d 697].)

In ascertaining the legislative intent of the amendment, we consider its legislative history as well as the historical circumstances of its enactment. (*People* v. *Black* (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104].) Unfortunately, those circumstances shed dim light on our problem.

The amendment was contained in Senate Bill No. 586 (hereafter SB 586). (Stats. 1981, ch. 1064.) As originally introduced in the Senate in March 1981, SB 586 proposed sweeping changes in the characterization of sexual offenses involving children; the bill included a repeal of section 288 in its entirety. (SB 586 (1981-1982 Reg. Sess.).)

On August 25, 1981, SB 586 was drastically amended in the Assembly by deleting many of its existing provisions and substituting, as new SB 586, many of the provisions of then Assembly Bill No. 457 (hereafter AB 457). As last amended in the Assembly on September 8, 1981, SB 586 set forth subdivision (b) of section 288 with the language "and against the will of the victim" still in the statute. (Assem. amend. to SB 586, § 1.) On September 13, 1981, the Senate rejected the Assembly amendments by a vote of 24 to 0. (Sen. J. of Sept. 13, 1981, p. 6337.)

Two days later, a conference committee reported the bill out with amendments, including the one at issue here, and recommended "That the Assembly amendments be concurred in, and that the bill be further amended." The conference committee report was adopted unanimously by both houses on that same day. The reason for the conference committee's amendment deleting "and against the will of the victim" is unknown. (Sen. J. of Sept. 15, 1981, p. 6613.) Similarly the reason for unanimous approval by both houses of the conference committee's report, on the same day it was reported out, is not apparent.

Since the legislative history of the amendment fails to solve our problem, we turn to other familiar canons of statutory construction. ▮▮▮ " 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' (*Select Base Materials* v. *Board of Equalization* [(1959)] 51 Cal.2d [640] at p. 645.) '[A] construction making some words surplusage is to be avoided.' (*Watkins* v. *Real Estate Commissioner* (1960) 182 Cal.App.2d 397, 400 [6 Cal.Rptr. 191].) When used in a statute words must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear, and the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230-231 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Johnstone* v. *Richardson* (1951) 103 Cal.App.2d 41, 46 [229 P.2d 9].)" (*People* v. *Black, supra,* 32 Cal.3d at p. 5.)

We start with the hypothesis that the amendment contained in SB 586 should be read literally so as to eliminate, in prosecutions under subdivision (b), any consideration of whether an act was undertaken against the minor's will. By this interpretation, it would be irrelevant whether a lewd act was undertaken against the minor's will or with or without the minor's consent. We find that conclusion untenable for a number of reasons.

First, subdivision (b) also makes criminal a lewd act committed by use of "duress, menace, or threat of great bodily harm." (See fn. 5, *ante.*) These words are ordinarily used to demonstrate that someone has used some form of psychological coercion to get someone else to do something they don't want to do, i.e., something against their will. Consequently, if the concept of violation of will is removed from these words, they are left, like shells on a beach, without substance.

By way of example, we focus on the term "menace." For purposes of California criminal law, the term "menace" is given the same meaning as

is set forth in the Civil Code.[10] (See *People* v. *Moore* (1961) 196 Cal.App.2d 91, 99 [16 Cal.Rptr. 294].) "Menace" means something different from "force;" thus, a mere verbal threat to have a mother arrested and to take her children from her constitutes a "menace." (*Ibid.*) The essential function played by the concept of "menace" is to avoid or vitiate consent to an act, so that the act cannot be said to constitute an exercise of free will. (See *Nicholson* v. *Nicholson* (1917) 174 Cal. 391, 393-394 [163 P. 219].) Thus, for example, mere persuasion, which, in fact, convinces someone to do something, does not constitute coercion or menace. (See *Thomson* v. *Mortgage Investment Co.* (1929) 99 Cal.App.205, 213 [278 P. 468].) Moreover, in order for menacing verbal threats to vitiate consent to an act, it must ordinarily be shown that the act would not have been undertaken but for the threats, i.e., it must be shown that the person subject to menacing threats acted in fact without free will. (*Nicholson* v. *Nicholson, supra,* 174 Cal. at pp. 393-394.)

In light of these authorities, we conclude it is semantically unreasonable to amputate from the concept of "menace" the requirement that an act be undertaken "against the will of the victim." The latter concept is necessary to any coherent meaning of "menace." We believe similar arguments could be constructed to demonstrate the terms "duress" and "threats" have no useful meaning absent a consideration of their effect on the will of a victim. We therefore infer that the Legislature did not intend to eliminate proof an act was undertaken against the victim's will in all circumstances under subdivision (b).

The inference we draw from this language is reinforced by our conclusion that, if the notion of the violation of a victim's will is exorcised from the statute, it is impossible to arrive at a workable definition of "force" that reasonably serves the purposes of subdivision (b) and its harsher potential penalties.

---

[10]Civil Code section 1568 provides: "*When deemed to have been obtained by fraud, etc.* Consent is deemed to have been obtained through one of the causes mentioned in the last section only when it would not have been given had such cause not existed."

Civil Code section 1569 provides: "*Duress, what.* Duress consists in:

"1. Unlawful confinement of the person of the party, or of the husband or wife of such party, or of an ancestor, descendant, or adopted child of such party, husband, or wife;

"2. Unlawful detention of the property of any such person, or,

"3. Confinement of such person, lawful in form, but fraudulently obtained, or fradulently made unjustly harassing or oppressive."

Civil Code section 1570 provides: "*Menace, what.* Menace consists in a threat:

"1. Of such duress as is specified in Subdivisions one and three of the last section;

"2. Of unlawful and violent injury to the person or property of any such person as is specified in the last section; or,

"3. Of injury to the character of any such person."

In construing the purpose of the amendment, we are mindful that the policy of the law sought to be implemented should be respected. (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081].) The statute should therefore be given a reasonable interpretation to that end. (*County of Alameda* v. *Kuchel* (1948) 32 Cal.2d 193, 199 [195 P.2d 17]; *Cory* v. *Golden State Bank* (1979) 95 Cal.App.3d 360, 367 [157 Cal.Rptr. 538].)

Absent a consideration of the victim's will, we would have to define "force" by objective standards. An objective definition of "force" ultimately proves unsatisfactory because we are concerned here with the laws of justice, not the laws of physics. Once the concept of "force" is cut loose from its ethical anchor (its effect on a victim's will), the concept tends to drift about in unpredictable directions, causing unfairly lenient punishments to be levied on some and unfairly harsh punishments to be levied on others.

Thus, for example, we could conceivably abandon the established construction given the term "force" in the law of rape and construe "force" to require a showing of physical harm to the victim. However, that construction would unreasonably exclude from subdivision (b) those who, by the use of physical force, commit lewd acts on children that are, in fact, against their will although the children suffer no physical harm. By this construction, a strange man who pulled a teenage girl into the bushes and fondled her wholly against her will would not be guilty of a subdivision (b) offense unless he caused her physical harm. In our view, the hypothetical stranger who thus violates the child's will should be subject to the potentially greater punishment of subdivision (b) without any showing he caused the girl physical harm.

We examine another possibility: that, for purposes of subdivision (b), "force" would be objectively defined simply as physical force substantially different from or substantially greater than that necessary to commit the lewd act. While this test would punish the stranger who drags the teenage girl into the bushes, it would also impose the potential formidable penalties of subdivision (b) on those who are far less culpable.

We have in mind that section 288 applies to a broad spectrum of conduct, age groups, and relationships. Thus, a lewd act itself can range from a mere touching (see, e.g., *People* v. *Ash* (1945) 70 Cal.App.2d 583, 584 [161 P.2d 415]) to oral copulation. (See, e.g., *People* v. *Webb* (1958) 158 Cal.App.2d 537, 541-542 [323 P.2d 141].) Victims include both infants and teenagers. Section 288 does not exempt any class or category of relationship from its prohibitions; thus, strangers, fathers, stepfathers, and neighbors are all equally capable of violation of section 288, including subdivision

(b). Indeed, minors who violate section 288 may be adjudicated of having committed the offense in juvenile court. (See, e.g., *In re James P.* (1981) 115 Cal.App.3d 681 [171 Cal.Rptr. 466]; *In re J.D.W.B.* (1970) 8 Cal.App.3d 103 [87 Cal.Rptr. 178].) Thus, were we to define "force" objectively as physical force substantially different from or substantially greater than that necessary to commit the lewd act, without consideration of the victim's will, we would sweep within the harsh contours of subdivision (b) the 16-year-old boy who gives his 13-year-old girl friend a piggyback ride into her bedroom, there to fondle her with her consent.[11] We cannot believe the Legislature intended to punish the hypothetical boyfriend equally with those who commit lewd acts by violence or threats of great bodily injury. (See fn. 5, *ante.*)

From this analysis we conclude the Legislature did not intend to eliminate from subdivision (b) the requirement that a lewd act be undertaken against the will of the victim where the victim suffers no physical harm.

But if the Legislature did not intend to amputate "against the will of the victim" for all purposes from subdivision (b), what was the purpose of the 1981 amendment? We believe it was to make clear that the prosecution need not prove resistance by the minor in order to prove an act was committed "by use of force" and against the will of the victim under subdivision (b).

In cases of forcible rape occurring prior to January 1, 1981, reasonable resistance by the victim was required to show the victim's refusal to consent to an act of intercourse. (*People* v. *Hunt* (1977) 72 Cal.App.3d 190, 194 [139 Cal.Rptr. 675], and authorities therein cited.) In the law of rape, a requirement of proof that an act was undertaken "without the consent" of the victim is the equivalent of a need to show that the act was accomplished "against the will" of the victim. (Perkins & Boyce, *op. cit. supra,* pp. 209-210, fn. omitted.) It follows that resistance has been historically required in the law of rape to show an act of intercourse was undertaken against the will of the victim.

Effective January 1, 1981, statutory amendments deleted resistance as an element of the offense of rape in California. (See Stats. 1980, ch. 587, § 1, p. 1595; *People* v. *Salazar, supra,* 144 Cal.App.3d at p. 806.) In *Salazar,* the court concluded the Legislature had deleted resistance as an element of the offense of rape to alleviate evidentiary difficulties that impeded rape convictions under prior law, when there was little or no evidence outside the victim's testimony to prove resistance. (*Id.,* at p. 807.)

---

[11]We discuss the ability of children under 14 to consent to a sexual act *post* at pages 482-484.

Here, we believe similar evidentiary concerns led the Legislature to pass the 1981 amendment, thereby effectively deleting any requirement of resistance from subdivision (b).

Our interpretation of the amended statute is aided by testimony taken by the Joint Committee for Revision of the Penal Code during hearings on child molestation legislation in 1980 and 1981. (Joint Committee for Revision of the Penal Code, Hearings on Child Molestation Legislation, December 16, 1980 (hereafter Hearings I), and April 10, 1981 (hereafter Hearings II).) We do not consult these hearings to ascertain the actual intent of the Legislature in enacting SB 586. Since we have no evidence that the collegial body of the Legislature had this evidence before it when it enacted the bill into law, the hearings are not competent evidence of actual legislative intent. (See *In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 740 [199 Cal.Rptr. 697].) However, the hearings do reflect the views of many noted experts in the field of child abuse and are therefore useful to us in our judicial task of placing a reasonable construction on the statute.

From these hearings, we derive some views on child molestation that are widely shared by those who work regularly with sexually abused children. We find a strong consensus of authority that because of his or her tender years and comparatively small size, a child is often incapable of resisting the demands of an adult that the child submit to sexual conduct, even when the conduct is, in fact, undertaken against the child's will. (Hearings I, *op. cit. supra,* at p. 239; Hearings II, *op. cit. supra,* at pp. 11, 44-45.) Witnesses testified that some trial courts had required the prosecution to meet an impossible burden of proving resistance by the minor to a lewd act in order to convict of a subdivision (b) offense "by use of force." (Hearings I, *op. cit. supra,* at pp. 13-14.)

■ We therefore conclude the most plausible purpose of the 1981 amendment was that it was designed to eliminate any requirement that the People prove resistance by the victim in a prosecution for violation of subdivision (b).

Our conclusion means that, while the prosecution need not prove resistance, if the victim suffered no physical harm the prosecution must still show that the lewd act was undertaken against the will of the victim. In our view that requirement may be met by circumstantial proof that such force was

used as would reasonably demonstrate that the lewd act was undertaken against the will of the victim under all circumstances, including the ages and sizes of the defendant and the victim.

4.

Our conclusion necessarily implies that, where no physical harm is caused the victim, it is an affirmative defense to a charged violation of subdivision (b) "by use of force" that the act was not, in fact, undertaken against the will of the victim but was rather undertaken with knowing consent. (See, e.g., *People* v. *Mayberry* (1975) 15 Cal.3d 143, 154 [125 Cal.Rptr. 745, 542 P.2d 1337]; *People* v. *Nash* (1968) 261 Cal.App.2d 216, 223 [67 Cal.Rptr. 621].) That conclusion requires us to explore two apparent problems, one legal and the other factual and sociological. We turn first to the legal problem: can a child under the age of 14 legally consent to a sexual act?

 It is settled that consent of the child is no defense to a charged violation of subdivision (a). (See *People* v. *Toliver* (1969) 270 Cal.App.2d 492, 496 [75 Cal.Rptr. 819]; *People* v. *Showers* (1949) 90 Cal.App.2d 248, 253 [202 P.2d 814]; 1 Witkin, Cal. Crimes (1st ed. 1963) Crimes Against Decency and Morals, § 546, p. 498; CALJIC No. 10.30 (1980 rev.).) The prohibition on consent to a violation of subdivision (a) is grounded in salutary judicially created public policy "for protection of infants or children as to whom persons commit lewd and lascivious acts at their peril." (*People* v. *Toliver, supra,* 270 Cal.App.2d at p. 496.) The law simply outlaws sexual conduct with children under the age of 14 under all circumstances.

This case makes no change in that policy. Those who commit lewd acts on children, even with their consent, have been and will continue to be punished severely under subdivision (a), which provides for incarceration in state prison for up to eight years. (See fn. 5, *ante.*) The question here is whether there is any legal prohibition to knowing consent as an affirmative defense to a charge force was used in violation of subdivision (b).

We are unaware of any statute making all children under the age of 14 incapable of consenting to a sexual act under all circumstances. (Compare, e.g., § 26, making children under the age of 14 incapable of committing crimes "in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness.") Nor are we aware of any other legal prohibition to an affirmative defense to a subdivision (b) offense that the act was undertaken with the knowing consent of the victim.

We therefore turn to the factual and sociological problem: are some children under the age of 14 in fact capable of knowingly consenting to participation in a sexual act?

In answering this question, we have in mind our prior discussion that section 288 applies to a wide spectrum of ages, conduct, and relationships. Consequently, we are mindful that the question is not whether *all* children under age 14 are capable of knowingly consenting to *all* forms of sexual conduct but rather whether *some* children under 14 are capable of knowingly consenting to *some* forms of sexual conduct, so that a defense of knowing consent should be available to a charged violation of subdivision (b) in appropriate circumstances.

In 1978, the United States Department of Health, Education and Welfare published a comprehensive report on adolescent sexuality in the United States: Adolescent Sexuality in a Changing American Society (hereafter *Adolescent Sexuality*). The report collects numerous surveys of sexual experiences of adolescent Americans. Among the studies reported is a national survey by Sorensen (1972) indicating that, by age 13, 8.5 percent of American females and 20 percent of American males had experienced intercourse. (*Adolescent Sexuality, op. cit. supra,* at p. 116.) Another survey of Michigan high school students by Verner and Stewart produced the following data on levels of sexual involvement in 1970 and 1973: (at pp. 111-112):

| Levels of sexual activity | Percentage of boys who have participated in an activity at least once 13 and younger | |
|---|---|---|
| | 1970 | 1973 |
| I. Held hands | 79 | 80 |
| II. Held arm around or been held | 60 | 67 |
| III. Kissed or been kissed | 63 | 65 |
| IV. Necked (prolonged hugging and kissing) | 46 | 48 |
| V. Light petting (feeling above the waist) | 37 | 40 |
| VI. Heavy petting (feeling below the waist) | 32 | 34 |
| VII. Gone all the way (coitus) | 24 | 28 |
| VIII. Coitus with two or more partners | 14 | 17 |
| Number in sample | 192 | 180 |

| Levels of sexual activity | Percentage of girls who have participated in an activity at least once | |
| --- | --- | --- |
| | 13 and younger | |
| | 1970 | 1973 |
| I. Held hands | 78 | 84 |
| II. Held arm around or been held | 68 | 72 |
| III. Kissed or been kissed | 66 | 68 |
| IV. Necked (prolonged hugging and kissing) | 46 | 43 |
| V. Light petting (feeling above the waist) | 27 | 31 |
| VI. Heavy petting (feeling below the waist) | 21 | 17 |
| VII. Gone all the way (coitus) | 10 | 10 |
| VIII. Coitus with two or more partners | 7 | 4 |
| Number in sample | 191 | 222 |

We do not suggest these survey results precisely reflect current attitudes or experiences of California youth under age 14. But we do think they are sufficiently useful to prove the point at issue: that some children under age 14 are capable of understanding some forms of sexual conduct and of giving their knowing consent to their participation in it. ▮ We therefore conclude that knowing consent by a minor who is, in fact, capable of such consent is an affirmative defense to an alleged violation of subdivision (b) "by use of force."

### 5.

We summarize the rules, applicable to a violation of subdivision (b) "by use of force," as follows:

Where a defendant uses physical force to commit a lewd act upon a child under the age of 14, and the child suffers physical harm as a consequence, the defendant has committed a lewd act "by use of force" under subdivision (b). Consent is no defense. Where no physical harm to the child has occurred, the prosecution has the burden of proving (1) that the defendant used physical force substantially different from or substantially in excess of that required for the lewd act and (2) that the lewd act was accomplished against the will of the victim. The prosecution may satisfy its burden on the latter issue by proving the physical force was such as would reasonably demonstrate that the lewd act was undertaken against the will of the victim under all circumstances, including the ages and sizes of the defendant and

the victim. The prosecution need not prove that the victim resisted the lewd act. Where no physical harm to the victim has occurred, it is an affirmative defense that the victim knowingly consented to the lewd act.

D

With these rules in place we return to the instant case and to the episode during which defendant carried the girls along and felt their crotches. Since no physical harm to the victims occurred, we examine whether substantial evidence supports a finding that the lewd acts were accomplished by such physical force as would reasonably demonstrate the acts were undertaken against the will of the victims or, conversely, whether the record shows consent as a matter of law. We conclude the lewd acts were accomplished by a deception amounting to fraud in the fact, so that there was no consent by the girls as a matter of law.

"On the issue of consent, from an analytic standpoint, there are two kinds of fraud: fraud in the fact and fraud in the inducement. The distinction between the two is as follows: in fraud in the fact, the victim is fraudulently induced to consent to the doing of act X; the perpetrator of the fraud, in the guise of doing act X, actually does act Y; in fraud in the inducement, the victim is fraudulently induced to consent to the doing of act X and the perpetrator of the fraud does commit act X. [¶] Fraud in the fact, it has been said, vitiates consent. (See 1 Witkin, Cal. Crimes, § 290.) It appears equally reasonable to say that where there is fraud in the fact, there was no consent to begin with. Consent that act X may be done is not consent that act Y be done, when act Y is the act complained of." (*People* v. *Harris* (1979) 93 Cal.App.3d 103, 113-114 [155 Cal.Rptr. 472].)[12]

To our knowledge, the courts have uniformly applied the doctrine of fraud in the fact to uphold convictions for rape by force where physicians have accomplished intercourse on patients who thought instruments or fingers were being inserted in their bodies and who were therefore unaware an act of intercourse was taking place. (See, e.g., *State* v. *Atkins* (Mo. 1926) 292 S.W. 422; *Pomeroy* v. *State* (1883) 94 Ind. 96 [48 Am.Rep. 146]; *Reg.* v. *Flattery* (England 1877) LR 2 QB Div. 410, 13 Cox CC 388; cf. *People* v. *Minkowski* (1962) 204 Cal.App.2d 832 [23 Cal.Rptr. 92]; see generally Perkins & Boyce, *op. cit. supra,* at pp. 1079-1083; Annot., Intercourse Accomplished under Pretext of Medical Treatment as Rape (1960) 70

---

[12]We note that section 261.6 provides: "In prosecutions under Section 261, 286, 288a, or 289, in which consent is at issue, 'consent' shall be defined to mean positive cooperation in act or attitude pursuant to an exercise of free will. *The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved.*" (Italics added.)

A.L.R.2d 824.) Similarly, Perkins and Boyce point to a disagreement in the cases with respect to whether forcible rape is committed by a man who has intercourse with a woman who consents upon the wrong belief the man is her husband. (Perkins & Boyce, *op. cit. supra,* at p. 1080.) They characterize, as better reasoned, cases that "hold such a misdeed to be rape on the theory that it involves fraud in the *factum* since the woman's consent is to an innocent act of marital intercourse while what is actually perpetrated upon her is an act of adultery." (*Id.,* at pp. 1080-1081; see generally Annot., Rape by Fraud or Impersonation (1963) 91 A.L.R.2d 591.)

The instant case is controlled by these authorities. From all circumstances, the trial court was entitled to conclude that when defendant picked up the girls, he did so for the purpose of molesting them but deceitfully led them to believe he was playing a game. At the moment defendant felt the girls' crotches, they failed to recognize defendant's true intentions and the significance of his acts. A few moments later, when defendant demanded a kiss, the girls realized the true significance of defendant's behavior; thus, they became frightened and related to Michelle's sister soon after the episode that defendant had grabbed "their private parts." At most, the girls consent was to a game, not to a sexual act. Any consent was therefore procured by a deception amounting to fraud in the fact so that the consent is not cognizable as a matter of law.

This result is in accord with the notion, examined *ante,* that the sexual will of a child, like the sexual will of an adult woman, deserves protection. The harsher penalties mandated by subdivision (b) and by section 667.6 are designed in part to punish the violation of the girls' conscious sexuality. The fact that they became aware of this violation moments after the event itself is immaterial. The essential wrong is the same; its perception and recognition merely followed the commission of the act by a matter of moments.

We therefore conclude the evidence was sufficient to sustain convictions for two counts of violation of subdivision (b) of section 288, lewd act "by force," because a separate lewd act by force was accomplished on each girl as defendant carried them along. Since the crimes involved separate victims, full consecutive sentences were mandated by subdivision (d) of section 667.6 and were properly imposed.

II*

. . . . . . . . . . . . . . . . . . . . . . .

*See footnote 1, *ante,* page 469.

## V

### DISPOSITION

The judgment is affirmed.

Evans, J., concurred.

**REGAN, Acting P. J.**—I respectfully dissent. While I abhor the occurrence of any lewd acts in our community, I cannot support a conviction of defendant under Penal Code section 288, subdivision (b), "by use of force." There is no question in my mind that defendant was properly convicted of section 288, subdivision (a), having committed a lewd or lascivious act "upon or with the body, or any part or member thereof, of a child under the age of 14 years, . . ." But there is no showing of force used in this case to support a conviction under subdivision (b).

Notwithstanding the majority's analysis compelling the conclusion the prosecution need not prove a child resisted the lewd act, and aside from the conclusion defendant may have fraudulently induced the children to play, either in order to commit the lewd act or to facilitate the lewd act, the facts do not demonstrate defendant used force to commit the act. By using this case to decide the resistance question, the majority posits a standard where virtually any physical touching constitutes force. We might as well deem any violation of subdivision (a) to be automatically a violation of subdivision (b). In fact, if one were to follow this case, even the most clinical of touching incidents, with any holding or other contact of the child's *nonprivate* parts, would constitute a violation of subdivision (b). Wherefore now is subdivision (a)?

I cannot agree with the majority's reasoning in toto. I do agree that the plausible purpose of the 1981 amendment of subdivision (b) deleting the language "against the will," was to eliminate the requirement for the prosecution to prove resistance by the victim. This conclusion is supported by evidence of legislative intent and by the evolution of the law of rape. Even so, however, the majority concludes the prosecution must still show the lewd act was undertaken against the will of the victim if the victim suffered no physical harm. That requirement, it is stated, may be met by circumstantial proof that enough force was used to reasonably demonstrate the lewd act was undertaken against the will of the victim.

That conclusion is misguided. It writes back into the subdivision precisely what the Legislature wrote out of the subdivision, so that the majority may in turn rest the conviction on the question of "knowing consent." I believe

the Legislature simply recognized the lewd act in subdivision (a) need not be against the will, and thus, it need not be in the use of force under subdivision (b). In fact, under the plain language of the statute, the act in subdivision (b) can be committed *with* knowing consent and still be a violation of the subdivision, if force is used. Force is limited to something the *perpetrator* applies; it is independent of the actions or thoughts of the under-14-year-old victim.

I cannot agree "knowing consent" by a minor under 14 years of age who is "capable" of such consent is an affirmative defense to an alleged violation of subdivision (b), "by use of force." It is not an affirmative defense to subdivision (a), and cannot be one to subdivision (b). In any case, consent must be gauged to the act, not to force. Does the majority suppose a child can consent to force, but not the act? In my mind, the statute creates a protected class under the age of 14, and the act, if done with force, is a violation of subdivision (b) regardless of "knowing consent," "against the will," or whether the victim resisted. Nothing in the majority's analysis of these questions, with which I agree in part and disagree in part, provides the definition of force needed for a conviction of subdivision (b).

I believe the best test would be simply to require the trier of fact to determine what is *substantially different* and/or *substantially greater* force than necessary to commit the lewd act itself. There is no danger of finding too great a penalty on those "far less culpable," as the majority fears. Under this test, I do not see how the facts of the instant case would ever warrant the conclusion defendant's holding the girls while playing was either substantially different from or substantially greater than what would be required to have committed the lewd act in the first place.

I would reverse the conviction of subdivision (b).

Appellant's petition for a hearing by the Supreme Court was denied September 19, 1984. Kaus, J., Broussard, J., and Reynoso, J., were of the opinion that the petition should be granted.