Filed 3/7/16  P. v. Luevano CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>RAYMOND MANUEL LUEVANO, SR.,<br><br>　　Defendant and Appellant. | B262391<br><br>(Los Angeles County<br>Super. Ct. No. YA087147) |

　　APPEAL from a judgment of the Superior Court of Los Angeles County. Alan B. Honeycutt, Judge.  Affirmed.

　　Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

　　Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Raymond Manuel Luevano, Sr., appeals from the judgment entered following a jury trial that resulted in his conviction of one count of sodomy with a child under age 10 (Pen. Code, § 288.7, subd. (a); count 1);[1] four counts of oral copulation with a child under age 10 (§ 288.7, subd. (b); counts 2-4, 6); two counts of committing a lewd act on a child (§ 288, subd. (a); counts 5, 7); and one count of resisting executive officer by violence (§ 69; count 8).[2]    Defendant was sentenced to prison as follows:  On count 1, he was sentenced to 25 years to life.  On each of counts 2 through 4, count 6, and count 7, he was sentenced to consecutive sentences of 15 years to life.  On count 5, he was sentenced to 15 years to life, to run concurrent with the sentence on count 1.  The trial court imposed the three-year upper term on count 8.

Defendant's sole claim is the trial court committed prejudicial error in joining two assault charges in Los Angeles Superior Court case No. YA088321 (YA088321) with the sexual abuse charges in Los Angeles Superior Court case No. YA087147-01 (YA087147).  He contends denial of the joinder motion was warranted, because the assault and sexual abuse charges were not in the same class and joinder would be prejudicial.  He further contends joinder of these different classes of charges resulted in a gross injustice.

We affirm the judgment.  Defendant has failed to carry his burden.  Joinder of the assault charges with the sex-related charges was not an abuse of discretion.  Sodomy, oral copulation, and lewd conduct with a child are all sexual assault offenses.  No prejudice would flow from a hypothetical trial on the consolidated charges.  The testimony of a sexual assault victim and her mother as to the assault incident would be cross-admissible

---

[1]    All further section references are to the Penal Code.

[2]    The jury also convicted defendant of one count of assault against a peace officer (§ 241, subd. (c); count 9), a misdemeanor and lesser included offense of the charge in count 9 (battery with injury on a peace officer; § 243, subd. (c)(2)).  The trial court later dismissed count 9 (§ 1385).  The prior prison term allegations (§ 667.5, subd. (b)) as to all counts also were dismissed (§ 1385).  As to counts 5 and 7, the jury found true the multiple victim allegation (§ 667.61, subds. (b) & (e)).

on whether the assault incident was an attempt by defendant to intimidate and dissuade witnesses from testifying against defendant on the sexual assault charges. The record does not support his contention of gross injustice from consolidation of these charges.

## BACKGROUND

Mother is the biological mother of C.H. and J.H. Defendant is C.H.'s biological father and J.H.'s stepfather. In YA087147, the original information charged defendant with seven sex-related crimes. C.H. was the victim alleged in counts 1 through 5. Defendant was charged in these counts with sodomy with a child under age 10 (§ 288.7, subd. (a); count 1), oral copulation with a child under age 10 (§ 288.7, subd. (b); counts 2-4), and committing a lewd act upon a child (§ 288, subd. (a); count 5). As to J.H., he was charged with oral copulation with a child under age 10 (§ 288.7, subd. (b); count 6) and lewd act upon a child (§ 288, subd. (a); count 7).

At the time of the preliminary hearing, C.H. was nine years old and J.H. was seven years old. After C.H. was sworn as a witness, the court announced a lunch break recess. Shortly thereafter, a physical altercation occurred between defendant and the bailiff, Deputy Sheriff Sean Hylands. In an incident report, Hylands related what happened. As he began escorting defendant towards the lockup door, defendant suddenly turned towards C.H. and her mother and loudly yelled, "I fucking hate you!" Tightening his grip on defendant's arm, Hylands told defendant, "That is enough." Defendant resisted Hylands's attempt to continue to the lockup area, and the two engaged in a physical altercation.

Mother, who was present as a support person for her daughter, told Hylands she and C.H. were leaving the courtroom when defendant turned toward her and yelled, "I fucking hate you." She believed defendant was trying to get at her to hurt her and that he was attempting to scare her from testifying. Fearful, she grabbed C.H. and ran out of the courtroom. C.H. told Hylands that she was stepping down from the witness stand when she heard defendant yell, "I hate you." After observing him "'wiggling' away from" Hylands and hitting his head on the door, C.H. became frightened defendant might try to hurt her or her mother. She and her mother then ran from the courtroom.

3

In the incident's aftermath, defendant was charged in YA088321 with resisting an executive officer with violence (§ 69) and battery with injury to a peace officer (§ 243, subd. (c)(2)).  At the preliminary hearing, Hylands testified, and the court held defendant to answer on these charges (Hylands assault charges).

The prosecutor filed a motion for joinder of all counts in YA087147 and YA088321.  Defendant filed opposition.

At the motion hearing, the prosecutor pointed out defendant's outburst took place after one of the sexual assault victims had been sworn.  He argued this "show of force" was part of defendant's attempt at witness control and explained the witnesses' demeanor at that hearing and also possibly at trial.  He added that in a separate trial based on defendant's outburst, the victim and her mother would be witnesses.

Defense counsel noted there was no declaration indicating the prosecution intended to call the victim and her mother as witnesses in the Hylands assault case.  He argued the joinder motion was an attempt to join a weak case, i.e., sex crimes case, with a "moderate case," i.e., Hylands assault case; no "forcible sex acts" were alleged; and consolidation would unnecessarily lengthen the trial on the sex-related case.

In granting the motion, the trial court found "[t]he crimes alleged in each case fall within the category of assaultive crimes.  The crimes alleged in case YA087147 are assaultive in their nature, but they are related crimes as to [the] minor children.  The second ground[] . . . is that there are witnesses that could be called in each case."  The court found evidence regarding the Hylands incident was relevant to the sexual assault counts under the prosecution's theory that incident was part of defendant's ongoing attempt to intimidate and dissuade the victims from cooperating against defendant.  The court rejected defendant's claim that consolidation was an attempt to bolster a weak case with a moderate case, because the court did not "have any information . . . to make the decision as to whether [the sexual assault case] is in fact a weaker case which would prohibit the joinder."

On appeal, this court reviews "'"'"the whole record in the light most favorable to the judgment'"'"'" and presumes "'"'"the existence of every fact the trier could reasonably

4

deduce from the evidence.'"'"" (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1182-1183.) Mindful of these controlling principles, we summarize the evidence presented at trial.

C.H., then age 10, testified regarding the events underlying counts 1 through 5. She was five or six years old when defendant first sexually touched her. He asked her to fondle his penis. Defendant performed oral copulation on C.H., and then had C.H. orally copulate him. When David and Raymond, her brothers, were visiting, defendant directed C.H., then age seven or eight, to go into his bedroom and lock the door. Defendant again had C.H. engage in mutual acts of oral copulation. When C.H. was eight years old, J.H. knocked on the bedroom door. Defendant and C.H. were orally copulating each other in the bedroom. He told J.H. to go play. On a different occasion, defendant tried to put his penis in C.H.'s anus but it did not fit.

J.H., who was age eight at trial, testified that after defendant directed her into her mother's bedroom, he made J.H. and C.H. touch each other's "private areas," and he also touched their private areas. J.H. remembered another occasion when defendant touched her.

C.H. testified she saw defendant orally copulate J.H., who was then five or six years old. Upon noticing C.H., defendant told her to go play. At some point, he told J.H. and C.H. to perform oral copulation on each other, which they did.

C.H. told her mother about the sexual abuse but identified the perpetrator as "Johnny," the father of J.H. Defendant had threatened to spank C.H. if she told her mother and said he could go to jail if she did not name Johnny as the abuser.

After C.H. told a teacher defendant had sexually abused her, the teacher reported the abuse to the Department of Children and Family Services. The police interviewed C.H. and J.H. about what had transpired. C.H. related defendant asked her if she wanted to have "s-e-x" and that there were a total of four incidents, each of which was the same except the last. The first occurred when she was five years old. After he had her orally copulate him, he orally copulated her. In the last, when C.H. was eight years old, defendant tried to put his penis into her anus but it did not fit. Also, C.H., who was six

5

years old at the time, saw defendant orally copulate J.H., who was four years old.  When asked if defendant touched her or kissed her private parts, J.H., then six years old, told police she did not remember.

On November 27, 2012, Lindsey Watson, a clinical psychologist, conducted a forensic sex abuse interview of C.H. and one of J.H.  C.H. and J.H. each repeated approximately her same account.

J.H., who was very shy and reluctant to speak, told Dr. Watson her mother said "don't tell anyone because no one can know.

Hylands testified regarding the assault incident.  On June 11, 2013, he was the courtroom bailiff and was present with defendant in the courtroom for the preliminary hearing on the sexual assault charges.  C.H. and Mother, her support person, also were present.  After C.H. was sworn to testify, the court declared a recess.  Hylands began escorting defendant towards the lockup.  After a few steps, defendant yelled angrily at C.H. and Mother, "I fucking hate you."  At the time, he was subject to a protective order prohibiting any contact with C.H., Mother, and J.H.

Hylands tightened his grip on defendant's bicep and told him to calm down. Upon reaching the doorway, he placed defendant in a corner so he could unlock the door.  Defendant twisted towards Hylands and attempted to head-butt him.  He tried to push through Hylands towards C.H. and Mother, who were behind Hylands.  In the ensuing struggle, the two fell into a hallway and bounced against the walls before falling to the ground.

As to the counts 1 through 7, defendant denied sexually abusing C.H. and J.H.  He admitted he was presently incarcerated for domestic violence against Mother but denied beating her.  He testified C.H. had a problem with defendant and Mother fighting and believed C.H. parroted whatever Mother says.

Regarding the Hylands assault charges (counts 8 and 9 ), defendant testified he was addressing Mother, not the minor victims, when he yelled, "I fucking hate you."  He admitted that by yelling at Mother, he intentionally violated the restraining order.  Defendant denied trying to stop C.H. from testifying.  He also denied head-butting

6

Hylands. He testified he was defending himself when Hylands tried to push him into the wall and throw him to the floor and that the two of them fell when Hylands pushed him into the hallway.

Dr. Kelly Callahan, a defense child abuse expert, testified the genital examinations of C.H. and J.H. were normal and explained a normal exam could be consistent with sexual abuse or no sexual abuse. She did not expect to see any medical indications of oral copulation or vaginal touching.

## DISCUSSION

Defendant contends the Hylands assault charges (counts 8 and 9) should not have been consolidated with the sex-related charges (counts 1 through 7), because the two sets of charges do not belong to the same class of crimes and joinder of these charges for trial was prejudicial. We conclude defendant has failed to carry his burden.

a. *Standard of Review*

"Section 954 authorizes the joinder of 'two or more different offenses connected together in their commission . . . or two or more different offenses of the same class of crimes or offenses, under separate counts . . . .' The statute further provides that 'if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated.' [Citation.]" (*People v. Merriman* (2014) 60 Cal.4th 1, 36 (*Merriman*).)

"The law favors the joinder of counts because such a course of action promotes efficiency. [Citation.] . . . [A]lthough a trial court is authorized to consolidate two or more accusatory pleadings for trial in an appropriate case, it is not required to do so. [Citations.] [¶] In exercising its discretion in this regard, the court weighs 'the potential prejudice of joinder against the state's strong interest in the efficiency of a joint trial. [Citation.]' [Citation.] To succeed on a claim that the trial court abused its discretion in . . . ordering consolidation, the defendant must make a '"clear showing of prejudice"' and establish that the ruling fell "'""outside the bounds of reason."""' [Citations.] An appellate court evaluates such claims in light of the showings made and the facts known by the trial court at the time of the court's ruling. [Citations.] [¶] If the evidence

7

underlying the joined charges would have been cross-admissible at hypothetical separate trials, 'that factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges.' [Citations.]" (*Merriman*, *supra*, 60 Cal.4th at pp. 37-38.) "'"[T]wo-way" cross-admissibility is not required.' [Citations.]" (*Id*. at p. 38.)

Further, although "the trial court acted well within its discretion in . . . consolidating charges, [the reviewing court] must further inquire whether events *after* the court's ruling demonstrate that joinder actually resulted in 'gross unfairness' amounting to a denial of defendant's constitutional right to fair trial or due process of law. [Citations.]" (*Merriman*, *supra*, 60 Cal.4th at p. 46.)

b. *Threshold Joinder Requirements Met*

Defendant contends the sodomy, oral copulation, and lewd conduct with a child crimes were "non-forcible in terms of physical violence" and for this reason joinder of these "non-forcible sexual abuse" charges with the Hylands assault charges was improper. We disagree.

The sodomy and oral copulation charges are sexual assault offenses. (*People v. Harrison* (1989) 48 Cal.3d 321, 327 [describing rape, sodomy, and oral copulation, the "basic trilogy of sex crimes" as "sexually assaultive behavior"].) We note defendant does not claim these two sexual assault charges were improperly joined with the lewd conduct with a child charge, nor would such claim be meritorious.

Lewd conduct with a child (§ 288, subd. (a )) is listed expressly as a "'violent felony'" in the Penal Code. (§667.5, subd. (c)(6); see also § 1192.7, subd. (c)(6) [serious felony].) "[S]ection 288 does not explicitly require contact with certain intimate parts of the victim's body. In addition, section 288 had been construed to apply to *all* sexually motivated touchin*gs*." (*People v. Martinez* (1995) 11 Cal.4th 434, 451, fn. 17 (*Martinez*).) "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) "The evidence must only demonstrate that the defendant willfully or purposefully attempted a 'violent injury' *or* 'the least touching,' i.e., 'any wrongful act committed by means of physical force against

8

the person of another.' [Citation.]" (*People v. Colantuono* (1994) 7 Cal.4th 206, 214, italics added.) "One may commit an assault without making actual physical contact with the person of the victim." (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.) "The terms 'violence' and 'force' are synonymous when used in relation to assault [citation], and include any application of force even though it entails no pain or bodily harm and leaves no mark. As stated in *People* v. *Bradbury* [(1907)] 151 Cal. 675, 677, . . . 'The kind of physical force is immaterial . . . ; it [violence] may consist in the taking of indecent liberties with a woman, or laying hold of and kissing her against her will.' It follows that the taking of indecent liberties with a five-year-old child is an act of violence, and if of the type described and made punishable by section 288 . . . , is 'criminal violence.'" (*People v. James* (1935) 9 Cal.App.2d 162, 163-164.)

In view of above, we conclude the crime of committing lewd conduct on a child age 14 or under in violation of subdivision (a) of section 288[3] is a sexual assault offense.[4] (See also *Coleman v. Superior Court* (1981) 116 Cal.App.3d 129, 132, 134-135 ["committing a lewd act (§ 288)" as "assaultive crime"]; accord, *People v. Poon* (1981) 125 Cal.App.3d 55, 60, 68, overruled on other point in *People v. Lopez* (1998) 19 Cal.4th 282, 292.)

---

[3]    Subdivision (a) of section 288 provides: ". . . any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

[4]    This conclusion is equally applicable to the crime described in subdivision (c)(1) of section 288: "*Any person who commits an act described in subdivision (a) with the intent described in that subdivision*, and the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child, is guilty of a public offense and shall be punished by imprisonment in the state prison for one, two, or three years, or by imprisonment in a county jail for not more than one year. In determining whether the person is at least 10 years older than the child, the difference in age shall be measured from the birth date of the person to the birth date of the child." (Italics added.)

Further, our conclusion is buttressed by the definition of "sexual assault" in the Child Abuse and Neglect Reporting Act (Act) (§11164, subd. (a); see generally § 11164 et seq.). "The intent and purpose of this [Act] is to protect children from abuse and neglect. In any investigation of suspected child abuse or neglect, all persons participating in the investigation of the case shall consider the needs of the child victim and shall do whatever is necessary to prevent psychological harm to the child victim." (§ 11164, subd. (b).) This purpose aligns with the purpose of section 288, which "was enacted to provide children with 'special protection' from sexual exploitation [citation]"; "recognizes that children are 'uniquely susceptible' to such abuse as a result of their dependence upon adults, smaller size, and relative naiveté [citation]"; and "assumes that young victims suffer profound harm whenever they are perceived and used as objects of sexual desire. [Citation.]" (*Martinez*, *supra*, 11 Cal.4th 434, 443-444.)

In light of these substantially similar purposes, the Act's definition of "sexual assault" dispels any doubt that lewd conduct on a child under subdivision (a) of section 288 is a sexual assault offense. "As used in this [Act], 'sexual abuse' means sexual assault or sexual exploitation as defined by the following: (a) 'Sexual assault' means conduct in violation of one or more of the following sections: Section 261 (rape), subdivision (d) of Section 261.5 (statutory rape), Section 264.1 (rape in concert), Section 285 (incest), Section 286 (sodomy), *subdivision (a) or (b), or paragraph (1) of subdivision (c) of Section 288 (lewd or lascivious acts upon a child)*, Section 288a (oral copulation), Section 289 (sexual penetration), or Section 647.6 (child molestation)." (§11165.1, subd. (a), italics added.)

Additionally, the Hylands assault charges were connected to the sexual assault charges in that a reasonable inference arises from defendant's assault on Hylands that defendant's motive was in furtherance of his attempt to intimidate the minor victims and their mother from testifying against him in court, which thereby would provide the

10

ammunition for convicting him of the sexual assault charges.**5**  The sexual assault charges therefore were properly joined with the Hylands assault charges.

    c. *Prejudicial Impact from Joinder of Charges Not Shown*

Defendant contends prejudice would accrue from joinder of the sexual abuse charges with the Hylands assault charges, because "[t]here was no inherent cross-admissibility between the two cases as the allegations involved wholly separate victims and conduct that occurred two years apart under radically different factual conditions, [and the two types of crimes were] motivated by radically different intents."  We disagree.

Evidence of "dissuasion of witnesses generally would have been cross-admissible in a hypothetical separate trial of the [sex] charge[s].  Accordingly, defendant fails to make the requisite clear showing of prejudice to establish that the court abused its discretion in . . . ordering consolidation." (*Merriman*, *supra*, 60 Cal.4th at p. 38.) Defendant ignored numerous trial court admonitions not to be disruptive and engaged in disruptive behavior prior to jury impanelment and during trial.  In particular, "[a] moment after 10-year-old C.H. was on the witness stand and was sworn, defendant produced a razor and began to cut his wrist in front of the jury and the witness."

    d. *No "Gross Injustice" Resulting from Joinder Shown*

Defendant contends joinder of the Hylands assault charges with the sexual abuse charges rendered his trial unfair and resulted in gross injustice, because evidence he

---

**5**    In *Merriman*, the Court reasoned:  "The counts involving defendant's attempts to evade arrest and to dissuade and intimidate the witnesses who testified at the grand jury proceeding were connected . . . in their commission with the murder count because defendant's apparent motive for resisting arrest and intimidating witnesses was to avoid criminal liability for . . . murder.  (Cf. *People v. Alvarez* [(1996) 14 Cal.4th 155] at p. 188 [the charged rape . . . connected in its commission to the vehicle theft count because the theft may have been motivated by a desire to avoid arrest for . . . rape]; *People v. Valdez* (2004) 32 Cal.4th 73, 119 [. . . charge of escape from custody . . . connected in its commission to . . . murder charge because . . . apparent motive for . . . escape was to avoid prosecution for murder].)"  (*Merriman*, *supra*, 60 Cal.4th at pp. 36-37.)

physically assaulted an adult law enforcement male in public raised a presumption he was "the very sort of person who could sexually assault his children in private." Also, his defense that the minor victims fabricated their testimony at the instigation of their mother was undercut by his self-defense claim to the Hylands attack charges, to wit: the jury was permitted thereby to infer defendant always placed the blame on someone else. His contention is unsupported by the record. Moreover, evidence regarding the Hylands assault incident had no direct bearing on the sexual assault charges and was probative only as to whether such incident was motivated by defendant's ultimate goal to intimidate and dissuade the minor witnesses and their mother from testifying against him, which testimony might lead to his conviction of the sex charges.[6]

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

---

[6] On witness credibility, the jury was instructed to consider certain enumerated factors, including: "What was the witness's behavior while testifying?"; "Was the witness's testimony influenced by a factor such as bias or prejudice, a personal relationship with someone involved in the case . . . ?"; and "What was the witness's attitude about the case or about testifying?"

12