Filed 8/28/24  P. v. Molina CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DYLAN MICHAEL MOLINA,<br><br>    Defendant and Appellant. | D081931<br><br><br><br>(Super. Ct. No. SCD284638) |


APPEAL from a judgment of the Superior Court of San Diego County, Runston G. Maino, Judge.  Reversed and remanded.

Charles M. Sevilla for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael J. Patty, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Dylan Michael Molina of one count of rape of an unconscious person (Pen. Code,[1] § 261, subd. (a)(4).)  The trial court sentenced Molina to a prison term of six years.

---

[1]    Unless otherwise indicated, all further statutory references are to the Penal Code.

Molina contends the trial court prejudicially erred in several respects. As we will explain, we determine that one of Molina's contentions has merit and requires that we reverse the judgment and remand for further proceedings. Specifically, the trial court prejudicially erred by not giving a sua sponte instruction on simple battery (§ 242) as a lesser included offense to the charge of raping an unconscious person (§ 261, subd. (a)(4)). We accordingly reverse the judgment and remand for further proceedings.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In late December 2019, Molina met several friends for dinner at a restaurant in San Diego to celebrate the birthday of one of Molina's close friends (Friend). After dinner, Molina and three other people from the dinner party decided to continue the celebration by going out to drink at bars in downtown San Diego. Molina lived in the San Diego area, but the three other people were from out of town and were staying together in a single hotel room in the vicinity of the bars that the group visited.

One of the three people who went out with Molina to the bars was Jane Doe. Jane Doe was married to one of Molina's longtime friends, but Jane Doe's husband did not come to San Diego for the birthday celebration. The other two people were Friend and his girlfriend (Girlfriend). When Jane Doe and Girlfriend booked the hotel room, the plan was for Jane Doe to sleep in one of the beds, and Friend and Girlfriend to sleep in the other bed.

The group visited three bars during the evening and consumed several drinks. Molina also smoked cannabis. At some point during the evening, the group decided that because Molina was too intoxicated to drive home, he would stay for some period of time in the hotel room where Jane Doe, Friend and Girlfriend would be sleeping.

2

After the group returned to the hotel around 1:00 a.m., Jane Doe fell asleep on one of the beds. She was lying on top of the covers and was fully clothed. Molina and Friend each consumed one more alcoholic drink, and then everyone went to sleep. According to Molina, he took off his pants (keeping on his boxer shorts) and climbed under the covers in the same bed where Jane Doe was sleeping on top of the covers. Friend and Girlfriend slept in the other bed.

Jane Doe testified that, presumably due to her alcohol consumption, she has only fragmentary memories of the evening's events. She has no memory of the second or third bar that the group visited, and she does not remember walking back to the hotel. Once Jane Doe got back to the hotel, she remembers only (1) being in a parking garage to retrieve her luggage from her vehicle; (2) tearing her pants in the lobby of the hotel when using a slanted wall as a slide; and (3) "going to bed" with her clothes on, on top of the covers.

According to Jane Doe, the next thing she remembers is waking up under the covers of the bed with Molina's penis thrusting in and out of her vagina from behind. Jane Doe testified that after awakening more fully, she turned around and saw Molina's smiling face. Jane Doe got out of bed screaming "no" several times. Jane Doe also repeatedly said something to Molina such as, "You are not my husband." Jane Doe testified that she could not give an estimate of the length of time between when she woke up to the sensation of a penis inside her and when she turned around and saw Molina's face. When speaking to a detective on the morning of the incident, Jane Doe said, "It was a slow motion. He was thrusting in and out. He did it quite a few times," and it was "maybe a minute or two." Further, Jane Doe testified that Molina was not wearing a condom and did not ejaculate.

Jane Doe's screaming woke up Girlfriend, and Jane Doe then left the hotel room and fled to the lobby in an emotional state. At this point it was approximately 4:45 a.m. Jane Doe eventually spoke with two security guards, both of whom she told that she woke up with Molina's penis inside of her. Police arrived at the scene, and a preliminary alcohol screening of Jane Doe conducted at 5:59 p.m. showed a reading of .152. A police officer noted that Jane Doe seemed to be intoxicated. The test results from blood drawn from Jane Doe around noon showed a blood-alcohol level consistent with the results of the preliminary alcohol screening.

When Molina was questioned by police officers at the hotel shortly after the incident, he denied having sexual intercourse with Jane Doe or having touched her in bed at all. Jane Doe underwent a forensic medical examination after the incident, and Molina's DNA was located in her genital area. Molina was charged with one count of raping an unconscious person. (§ 261, subd. (a)(4).)

Molina testified at trial and admitted to engaging in sexual intercourse with Jane Doe. Molina explained that, as he perceived the situation, Jane Doe was "absolutely" awake during the entire incident, and he did not think that she was unconscious or unaware of what was happening. Molina testified that at some point during the night while he was sleeping, Jane Doe got under the covers. She woke him up when she pressed against him so that they were in a "spooning" configuration. Jane Doe used her arm to move him closer to her, and they "cuddled." Molina used his hand to touch Jane Doe's waist, buttocks and crotch over her clothes. Jane Doe then pulled down her pants, and Molina touched the same areas of Jane Doe's nude body.

Molina testified that he next placed his penis in Jane Doe's vagina and they had sexual intercourse "for a minute or two." Jane Doe then turned to

4

look at Molina and said, "You are not my husband. How did this happen?" Jane Doe got out of bed and kept repeating that statement. Molina testified that he lied to the police officers because he was scared and did not understand why Jane Doe reacted like she did.

The jury convicted Molina of raping Jane Doe while she was unconscious (§ 261, subd. (a)(4)), which is the only count with which he was charged. The trial court imposed a middle term sentence of six years.

## I.

## DISCUSSION

A. *The Trial Court Erred by Failing to Instruct, Sua Sponte, on Simple Battery as Lesser Included Offense to Raping an Unconscious Person*

Molina contends that the trial court prejudicially erred because it did not provide a sua sponte instruction to the jury identifying simple battery (§ 242) as a lesser included offense of raping an unconscious person (§ 261, subd. (a)(4)).

1. *Legal Standards Applicable to Lesser Included Offense Instructions*

Although defense counsel did not expressly request that the jury be instructed with any lesser included offenses,[2] "[a] trial court has a sua sponte duty to 'instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser.' " (*People v. Shockley* (2013) 58 Cal.4th 400, 403–404 (*Shockley*).)

---

[2]  The parties specifically discussed with the trial court whether any lesser included offenses applied, but both defense counsel and the prosecutor deferred to the trial court on that issue, with defense counsel specifically stating that he was not waiving or forfeiting the requirement that a trial court instruct, sua sponte, on appropriate lesser included offenses. The trial court concluded that no instruction on lesser included offenses was warranted, but that "if I'm wrong and there is a conviction and there is an appeal, the Court of Appeal will only be too happy to tell me I'm wrong."

5

" 'On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support.' " (*People v. Smith* (2013) 57 Cal.4th 232, 240.) In this context, substantial evidence is " ' "evidence that a reasonable jury could find persuasive" ' " [citation], which, if accepted, ' "would absolve [the] defendant from guilt of the greater offense" [citation] *but not the lesser*.' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1218 (*Cole*).) "[T]he court need instruct the jury on a lesser included offense only '[w]hen there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of the lesser offense." (*Shockley*, at p. 404.) "[I]nstructing on lesser included offenses shown by the evidence avoids forcing the jury into an 'unwarranted all-or-nothing choice' [citation] that could lead to an unwarranted conviction." (*People v. Hughes* (2002) 27 Cal.4th 287, 365.)

"To ascertain whether one crime is necessarily included in another, courts may look either to the accusatory pleading or the statutory elements of the crimes. When, as here, the accusatory pleading incorporates the statutory definition of the charged offense without referring to the particular facts, a reviewing court must rely on the statutory elements to determine if there is a lesser included offense." (*People v. Robinson* (2016) 63 Cal.4th 200, 207 (*Robinson*).)[3] " 'The elements test is satisfied if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, such that all legal elements of the lesser offense are also elements of the greater. [Citation.] In other words, " '[i]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser

_____

[3] The operative information alleged that Molina "did unlawfully have and accomplish an act of sexual intercourse with Another, a person not his/her spouse, when said person was at the time unconscious of the nature of the act, said unconsciousness being known to said defendant, in violation of [section 261, subdivision (a)(4).]"

6

included offense within the former.' " ' " (*Id.* at p. 207.) "On appeal, we independently review whether a trial court erroneously failed to instruct on a lesser included offense." (*People v. Trujeque* (2015) 61 Cal.4th 227, 271.)

2.     *Simple Battery Is a Lesser Included Offense*

Turning to the issue of whether simple battery is a lesser included offense of rape of an unconscious person under the elements test, we set forth the elements of both crimes.

In 2019, the elements required to prove rape of an unconscious person were that: (1) the defendant had sexual intercourse with the victim; (2) the defendant was not married to the victim at the time; (3) the victim was unable to resist because she was unconscious of the nature of the act; and (4) the defendant knew the victim was unable to resist because she was unconscious of the nature of the act. (Former § 261, subd. (a)(4).)[4] "A defendant may be convicted of rape of an unconscious person only if he had both knowledge of the person's unconsciousness and the wrongful intent to engage in an act of sexual intercourse with an unconscious person." (*People v. Dancy* (2002) 102 Cal.App.4th 21, 37.) A person is "unconscious of the nature of the act" if the person was "incapable of resisting because" the person " [w]as unconscious or asleep" or "[w]as not aware, knowing, perceiving, or cognizant that the act occurred." (§ 261, subd. (a)(4)(A).)[5]

[4]     Effective 2022, the Legislature amended the statute to remove the requirement that the defendant was not married to the victim. (Stats. 2021, ch. 626, § 17.)

[5]     Although not relevant to Molina's prosecution, a person is also unconscious of the nature of the act if the person "[w]as not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraud in fact," or "[w]as not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's

7

The Penal Code states that "[a] battery is any willful and unlawful use of force or violence upon the person of another." (§ 242.) "Even though the statutory definition of battery requires 'force or violence' . . . , this has the special legal meaning of a harmful or offensive touching" (*People v. Page* (2004) 123 Cal.App.4th 1466, 1473, fn. 1, citation omitted), and "[t]he word 'violence' has no real significance." (*People v. Mansfield* (1988) 200 Cal.App.3d 82, 87–88 (*Mansfield*).) Based on case law, " '*[a]ny* harmful or offensive touching constitutes an unlawful use of force or violence" under this statute. [Citation.] 'It has long been established that "*the least touching*" may constitute battery. In other words, force against the person is enough; it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave a mark.' " (*Shockley*, *supra*, 58 Cal.4th at p. 404, italics added.) Analytically, it is useful to view the crime of battery as having "two elements: (1) a use of force or violence that is (2) willful and unlawful. The first element is satisfied by *any* touching. [Citation] The second element of battery, willfulness and unlawfulness, is satisfied by any touching that is harmful or offensive." (*Shockley*, at p. 408, (conc. & dis. opn. of Kennard, J.), italics added.)[6]

Our inquiry is whether, based on those statutory elements, a defendant who rapes an unconscious person also "necessarily" commits the lesser offense of simple battery. (*Robinson*, *supra*, 63 Cal.4th at p. 207.) As we

---

fraudulent representation that the sexual penetration served a professional purpose when it served no professional purpose." (§ 261, subds. (a)(4)(C), (D).)

[6] "In this context, the term 'willful' means 'simply a purpose or willingness to commit the act . . . .' (§ 7, subd. 1.)" (*People v. Lara* (1996) 44 Cal.App.4th 102, 107.)

have explained, a battery requires "the least touching," but that touching must be "harmful or offensive." (*Shockley*, *supra*, 58 Cal.4th at p. 404.)

The act of sexual intercourse unquestionably involves the act of *touching* another person because it requires penetration of the genitalia. (*People v. Mendoza* (2015) 240 Cal.App.4th 72, 79 ["Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis."]; *People v. Karsai* (1982) 131 Cal.App.3d 224, 232 ["Penetration of the external genital organs is sufficient to constitute sexual penetration and to complete the crime of rape even if the rapist does not thereafter succeed in penetrating into the vagina."].) Thus, it is not possible to rape an unconscious person without the amount of touching required for a battery.

Further, the act of engaging in intercourse with an unconscious person who is, by definition, "incapable of resisting" (§ 261, subd. (a)(4)) is *necessarily* a "harmful or offensive" touching (*Shockley*, at p. 404) because it is performed without the consent of the other person. "[A] man who intentionally engages in sexual intercourse with a woman he knows to be unconscious is clearly aware that he is wrongfully depriving the woman of her right to withhold her consent to the act at the time of penetration. Since a woman may withdraw her consent to a sex act even after the initiation of sexual intercourse [citation], neither a woman's actual 'advance consent' nor a man's belief in 'advance consent' could possibly eliminate the wrongfulness of the man's conduct in knowingly depriving the woman of her freedom of choice both at the initiation of and during sexual intercourse. Consequently, a person who commits the prohibited act necessarily acts with a 'wrongful' intent." (*Dancy*, *supra*, 102 Cal.App.4th at pp. 36–37.) "Because a person who is unconscious or too intoxicated to give consent cannot consent to a sexual touching, the touching of such a person is necessarily 'against the will

9

of th[at] person.' " (*People v. Smith* (2010) 191 Cal.App.4th 199, 208 [discussing sexual battery as described in § 243.4, subd. (e)].) Moreover, the *offensive* nature of the touching that occurs during the rape of an unconscious person is underscored by section 263, which states that, for any type of rape, "[t]he essential guilt of rape consists in the *outrage* to the person and feelings of the victim of the rape." (§ 263.)

Accordingly, it is not possible to commit the crime of raping an unconscious person without also committing a simple battery. As a result, simple battery is a lesser included offense of raping an unconscious person in violation of section 261, subdivision (a)(4). In reaching this conclusion, we are in agreement with our colleagues in Division Two in *People v. Miranda* (2021) 62 Cal.App.5th 162, review granted June 16, 2021, S268384 (*Miranda*).[7] There, the court explained "[g]iven that battery requires only an offensive touching, it is impossible to commit" rape of an unconscious person "without also committing battery against that person." (*Id.* at p. 167.)[8]

---

[7] In *Miranda, supra*, 62 Cal.App.5th 162, review was granted on an issue unrelated to whether simple battery is a lesser included offense of raping an unconscious person. Specifically, our Supreme Court granted review in *Miranda*, pending disposition in *People v. Williams* (S262229), which will decide whether section 3051, subdivision (h), violates the equal protection clause of the Fourteenth Amendment by excluding young adults convicted and sentenced for serious sex crimes under the One Strike law (§ 667.61) from youth offender parole consideration, while young adults convicted of first degree murder are entitled to such consideration. (*People v. Miranda*, S268384, Supreme Ct. Mins., June 16, 2021; *People v. Williams,* S262229, Supreme Ct. Mins., July 22, 2020.)

[8] The People contend that the holding in *Miranda, supra*, 62 Cal.App.5th 162, is flawed because "it appears that the court in *Miranda* conflated tortious battery with criminal battery." The People do not explain the relevant differences in the two standards or how *Miranda* misapplied them.

The Second District in *People v. Hernandez* (2011) 200 Cal.App.4th 1000, 1006 reached the opposite conclusion. *Hernandez* held that "battery is not a lesser included offense of rape of an unconscious person" because "an unconscious person could be raped within the meaning of section 261, subdivision (a)(4) without having been subjected to force or violence, or even to a harmful or offensive touching." (*Id*. at p. 1006.) However, as *Miranda* pointed out (*Miranda, supra*, 62 Cal.App.5th at pp. 174–176, review granted), *Hernandez*'s analysis is flawed and unpersuasive.

The first premise of *Hernandez*'s holding is that rape of an unconscious person can be committed *without* the "force or violence" required for battery. (*Hernandez, supra*, 200 Cal.App.4th at p. 1006.) In reaching that conclusion *Hernandez* correctly pointed out that "[t]here is no requirement that the defendant use force or violence to accomplish the act of sexual intercourse" involved in raping an unconscious person, and that the only act required is the sexual intercourse itself. (*Ibid*.) However, that observation is irrelevant in deciding whether battery is a lesser include offense because, as we have explained, although the statutory language states that the crime of battery requires "force or violence upon the person of another" (§ 242), that terminology has a specialized meaning. The only force required for simple battery is "the least touching" (*Shockley, supra*, 58 Cal.4th at p. 404), and "[t]he word 'violence' has no real significance." (*Mansfield, supra*, 200 Cal.App.3d 82 at pp. 87–88.) Therefore, contrary to *Hernandez*'s

_____

We have based our analysis on the elements of criminal battery as set forth in section 242 and the case law applying it. We note, moreover, that " '[i]t has long been established, *both in tort and criminal law*, that 'the least touching' may constitute battery.' " (*People v. Colantuono* (1994) 7 Cal.4th 206, 214, italics added.)

11

conclusion, the act of raping an unconscious person clearly involves touching the victim with the type of minimal force required for the offense of simple battery.

The second premise of *Hernandez*'s holding is that "an unconscious person could be raped . . . without having been subjected to . . . harmful or offensive touching." (*Hernandez*, *supra*, 200 Cal.App.4th at p. 1006.) As we understand *Hernandez*, it draws support for this conclusion by observing that "[t]he act of sexual intercourse with an unconscious person is itself illegal, regardless of 'the victim's "advance consent" or the perpetrator's belief that the victim has consented in advance to the prohibited act.' " (*Hernandez*, *supra*, 200 Cal.App.4th at p. 1006.) *Hernandez* thus appears to have concluded that because a person subject to sexual intercourse while unconscious *might* in some rare instances have given *advance consent*, raping an unconscious person is not always harmful or offensive, as required for battery. Hernandez cites *Dancy*, *supra*, 102 Cal.App.4th at page 37 to support the premise that rape of an unconscious person is a crime *even if* the victim consented before becoming unconscious. Although *Dancy* lends support to that premise (*Dancy*, at pp. 34–37), it also discusses the *wrongfulness* of engaging in sexual intercourse with an unconscious person, even when the person purports to consent in advance. (*Id*. at p. 37.) In so doing, *Dancy* refutes *Hernandez*'s conclusion that rape of an unconscious person is not always harmful or offensive.

Specifically, as explained in *Dancy*, "[t]he concept of an 'advance consent' to unconscious sexual intercourse is based on a fallacy. A decision to engage in sexual intercourse is necessarily an ad hoc decision made at a particular time with respect to a particular act. While a woman may expressly or impliedly consent to *conscious* sexual intercourse in advance, she

remains free to withdraw that consent, and ordinarily has the ability to do so since she is conscious. Even if a woman expressly or impliedly indicates in advance that she is willing to engage in *unconscious* sexual intercourse, a man who thereafter has sexual intercourse with her while she is unconscious necessarily deprives her of the opportunity to indicate her lack of consent. The inherent risk that a man may misinterpret a woman's prior statements or conduct weighs strongly against recognizing 'advance consent' as a defense to rape of an unconscious person since the woman's lack of consciousness absolutely precludes her from making her lack of consent known at the time of the act. It follows that a man who intentionally engages in sexual intercourse with a woman he knows to be unconscious harbors a 'wrongful' intent regardless of whether he believes that she has (or she actually has) consented in advance to the act." (*Dancy*, *supra*, 102 Cal.App.4th at p. 37.) As *Miranda* summarizes this point, "advance consent to rape does not constitute valid legal consent, because such an advance decision eliminates the victim's ability to withdraw from the sexual activity while it occurs." (*Miranda*, *supra*, 62 Cal.App.5th at p. 175, review granted.)

Therefore, because rape of an unconscious person is wrongful conduct engaged without the ability to obtain the victim's consent while it occurs, it necessarily satisfies the definition of a harmful or offensive touching as required for simple battery, despite *Hernandez*'s positing of a hypothetical situation in which the victim has given advance consent.[9]

---

[9] The People contend that raping an unconscious person who has given consent before becoming unconscious is not harmful or offensive conduct that would constitute battery because "to constitute battery, the touching must be both objectively and subjectively offensive." However, the People's citation for that statement does not lend support. Specifically, the People rely on a quotation, originating with our Supreme Court, which states that a touching

13

3.     *Substantial Evidence Supports an Instruction on Simple Battery*

Having concluded that simple battery is a lesser included offense of rape of an unconscious person, we must next consider whether, under the circumstances of Molina's case, the trial court was required to instruct with that lesser included offense. We inquire whether "there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of" the lesser offense." (*Shockley*, *supra*, 58 Cal.4th at p. 404.) Put another way, we must decide if there is " ' "evidence that a reasonable jury could find persuasive" ' " [citation], which, if accepted, ' "would absolve [the] defendant from guilt of the greater offense" [citation] *but not the lesser*.' " (*Cole*, *supra*, 33 Cal.4th at p. 1218.) "In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight." (*People v. Breverman* (1998) 19 Cal.4th 142, 177 (*Breverman*).)

In this case, there was a reasonable factual dispute about both (1) whether Jane Doe was unconscious during the beginning of the sexual intercourse; and (2) whether, even if Jane Doe *was* unconscious, that fact was known to Molina. As we will explain, the evidence supports a finding in favor of Molina on either of those issues, under circumstances in which the jury could still conclude that Molina committed simple battery.

---

can constitute a battery " ' "although only the feelings of such person are injured by the act." ' " (*People v. Myers* (1998) 61 Cal.App.4th 328, 335, quoting *People v. Rocha* (1971) 3 Cal.3d 893, 899-900, fn. 12, in turn quoting *People v. Bradbury* (1907) 151 Cal. 675, 676.) That authority does not *require* a victim to subjectively take offense as a prerequisite to a finding of battery. On the contrary, the point of the statement is simply to explain that because battery *may* be based on subjective offensiveness, no physical injury is required for a touching to constitute battery.

As to the first issue, the jury reasonably could have concluded, based on the evidence, that Jane Doe was awake during all of the sexual intercourse and willfully participated in it, but that she did so under the mistaken and confused belief that she was in bed with her husband. A jury could base that finding on (1) Molina's testimony that Jane Doe moved up against him in bed and initiated intimate contact; (2) the fact that Jane Doe was highly intoxicated and therefore more likely to be confused during the incident; (3) Jane Doe's statement to the detective that she was aware of one or two minutes of sexual intercourse; and (4) Jane Doe's shocked reaction when she turned and saw that Molina was in bed with her, including testimony that she said, "You are not my husband." If the jury concluded that Jane Doe was in fact awake, although confused about where she was and who she was with, the jury would not be able to find that Jane Doe was "unconscious of the nature of the act," as required for a conviction under section 261, subdivision (a)(4).[10] However, the sexual intercourse would still have constituted a harmful or offensive touching as required for battery. As we have explained, sexual intercourse constitutes " ' "the least touching" ' " (*Shockley*, *supra*, 58 Cal.4th at p. 404) required for battery, and a jury could find that the touching was "harmful and offensive" as required for battery because the

_____

[10] During closing argument, this was one of the theories presented by defense counsel, who argued that one "explanation is that after a night of drinking, [Jane Doe] was not facing [Molina], and when she rolled over, she realized it was not [her husband]. It was [Molina], and that's what triggered her responses."

15

evidence at trial overwhelmingly supported a finding that Jane Doe was emotionally harmed by the touching and was repulsed by it.[11]

As to the second issue, the jury could reasonably conclude, based on the evidence, that Jane Doe was unconscious, in the sense of being in a state of light sleep and not fully aware of what was happening, but that Molina did not know that she was unconscious. According to the evidence, at some point in the night Jane Doe moved from on top of the covers to under the covers, ending up in bed with Molina. According to Molina, Jane Doe moved up against him and they "cuddled." A reasonable juror could conclude that, especially in light of Jane Doe's intoxication, when Jane Doe got under the covers she habitually moved close to Molina, as she might do with her husband at home, but that she was not conscious enough to realize where she was, who she was in bed with, or what she was doing. A jury could find that, under those circumstances, Molina mistakenly (although perhaps not reasonably) believed that Jane Doe was awake and initiating intimate contact with him, even though, in fact, Jane Doe was still asleep and did not know what she was doing.[12] In that case, the element of Molina's *knowledge*

---

11 A conviction for simple battery would not necessarily be precluded by Jane Doe's mistaken belief that she was engaging in intimate contact with her husband because "consent of the victim is not generally a defense to assault or battery." (*People v. Samuels* (1967) 250 Cal.App.2d 501, 513; see also 1 Witkin, Cal. Crim. Law 4th Defenses (2023) § 97 ["Consent is not a defense to assault and battery."].) "It is not an element of the offense [of battery] that the 'victim' did not consent and the People need not prove such lack of consent." (*People v. Sanchez* (1978) 83 Cal.App.3d Supp. 1, 3.)

12 Consistent with this theory, defense counsel argued that the evidence supported a finding that Molina believed Jane Doe was awake and wanted to engage in the sexual intercourse. Among other things, defense counsel pointed out that Jane Doe described Molina as smiling when she turned

16

of Jane Doe's unconsciousness, needed for a conviction under section 261, subdivision (a)(4), would not be proven beyond a reasonable doubt. However, all the elements of battery would be present because Molina would have engaged in a harmful or offensive touching of Jane Doe.

In sum, we conclude that there is substantial evidence that an element of the greater offense of rape of an unconscious person is missing, but that Molina is still guilty of the lesser offense of simple battery. (Cf. *Shockley*, *supra*, 58 Cal.4th at p. 404.) Accordingly, the trial court erred in not giving a sua sponte instruction on simple battery as a lesser included offense to rape of an unconscious person.

B.     *The Error Was Prejudicial*

Our final inquiry is whether the trial court's error was prejudicial and therefore requires reversal of the judgment. When assessing if an error in failing to instruct on a lesser included offenses is prejudicial, we apply the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Breverman, supra*, 19 Cal.4th at p. 178.) Under that standard, a "conviction of the charged offense may be reversed . . . only if, 'after an examination of the entire cause, including the evidence' [citation], it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred." (*Ibid.*) Our Supreme Court has made clear that a reasonable probability " ' "in this context does not mean more likely than not, but merely a *reasonable chance,* more than an *abstract possibility.*" ' " (*People v. Sandoval* (2015) 62 Cal.4th 394, 422 (*Sandoval*).) In contrast to the substantial evidence analysis we have performed to determine whether the trial court erred in not instructing on the lesser included offense, when

---

around to look at him, which could be understood as showing Molina believed Jane Doe had consented to the intimate contact.

reviewing for prejudice we focus "not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration." (*Breverman*, at p. 177.)

As significant to our harmless error inquiry, the jury asked a relevant question during deliberations. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1130 [in determining whether there was prejudice from instructional error, the reviewing court should examine "the entire record," including "any communications from the jury during deliberations"].) Specifically, the jury asked how Molina's "potential altered state" should impact their decision about whether Molina *knew* Jane Doe was unconscious.[13] The question about Molina's knowledge suggests the jury may have been considering the second scenario we have outlined above, in which Jane Doe got under the covers and pressed up against Molina in a habitual behavior, unconsciously assuming she was in bed with her husband. Molina could have mistakenly (and unreasonably) believed that Jane Doe was awake and wanted to engage in intimate contact with him. In that case, the jury could have had a reasonable doubt about whether Molina *knew* that Jane Doe was unconscious.

That scenario is a reasonable and plausible interpretation of the evidence. Jane Doe was highly intoxicated when the incident occurred (with a .152 reading more than an hour later), which would increase the possibility that, when she moved under the covers in the middle of the night, she did not realize where she was, who she was with, or what she was doing. Jane Doe

---

[13] Focusing on the element in the jury instruction requiring the People to prove Molina *knew* Jane Doe was unconscious of the nature of the act, the jury asked the following question in a note during deliberations: "In reference to element #4, 'the defendant knew,' does his potential altered state impact the way we interpret 'knew'?"

might, therefore, have unwittingly pressed up against Molina and "cuddled" with him, which he interpreted as her being awake and desiring to engage in intimate contact with him. Further, Jane Doe, herself, testified that when she eventually turned around to look at Molina, he was smiling. Jane Doe's testimony about Molina's smile could lead a reasonable juror to conclude Molina believed that Jane Doe was awake during their intimate contact and had agreed to it.

Based on the jury's question, combined with the evidence presented at trial, we conclude that there is " ' " a reasonable chance, more than an abstract possibility" ' " (*Sandoval, supra*, 62 Cal.4th at p. 422) that, if given an opportunity, the jury would have found that the People did not prove Molina knew that Jane Doe was unconscious as required for a conviction under section 261, subdivision (a)(4). However, because the evidence showed that Jane Doe suffered great emotional trauma from Molina's act of touching her to perform sexual intercourse, Molina could still have been convicted of simple battery.

Accordingly, the error in failing to instruct on simple battery as a lesser included offense to rape of an unconscious person was prejudicial error that requires reversal of the judgment and a remand for further proceedings.[14]

14    As we are reversing the judgment and remanding due to the failure to instruct on the lesser included offense of simple battery, we need not, and do not, reach Molina's remaining appellate arguments.

## DISPOSITION

The judgment is reversed, and this matter is remanded to the trial court for further proceedings.

IRION, J.

WE CONCUR:


O'ROURKE, Acting P. J.

RUBIN, J.